**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

LINDA DOWNS,                )          3:11-cv-00885-LRH-WGC
                           )
     Plaintiff,           )
                           )
  vs.                      )          **ORDER**
                           )
RIVER CITY GROUP, LLC, et. al.   )
                           )
                           )
     Defendants.          )
_____ )

Before the court are defendant Minnesota Life Insurance Company's (Minnesota Life) Emergency Motion for Protective Order Re: Deposition Subpoena Issued to Dr. Antonuccio and Motion to Strike Plaintiff's Designation of Dr. Antonuccio as Testifying Expert. (Docs. # 123, # 124.)[1] Defendant Wells Fargo Bank, N.A., joined in Minnesota Life's motions. (Docs. # 126, # 127.) Plaintiff Linda Downs opposed the motions. (Doc. # 128.) The court granted Minnesota Life's request for expedited relief and scheduled an accelerated briefing schedule and hearing which was conducted on January 28, 2013. (*See* Doc. # 125.)

## I. BACKGROUND

Plaintiff's Complaint asserts that in 2009, Minnesota Life issued mortgage protection insurance to her husband, Ronald Downs, in which Minnesota Life agreed to provide, in the event of Mr. Downs' passing, twelve monthly mortgage payments with regard to a loan procured from Wells Fargo and secured by their residence. (Doc. # 1 at 6-7.) Mr. Downs passed away on May 31, 2010, approximately six months after he procured the insurance. (*Id.* at 7.) On June 10, 2010, Plaintiff contacted Minnesota Life to initiate her claim for benefits. (*Id.*)

---

[1]Refers to court's docket number.

1   Following receipt of the claim, Minnesota Life undertook a "contestability investigation" which

2   Plaintiff contends took about two and a half months. (*Id*. at 7-9, Doc. # 124 at 3:24.) While

3   Minnesota Life was conducting its investigation, Plaintiff contends Wells Fargo initiated

4   foreclosure proceedings on the Downs' residence. (Doc. # 1 at 8.) Plaintiff alleges Minnesota

5   Life's failure to timely provide the benefits resulted in her inability to make the mortgage

6   payments, which in turn led to Wells Fargo initiating foreclosure proceedings.[2] (*Id*. at 15-18.)

7   A major component of Plaintiff's damages claim appears to be based on allegations of

8   emotional distress. (*See* Doc. # 1 at 14-15, 22.)

9         On December 10, 2012, Plaintiff disclosed as experts (among others) her treating health

10   care providers, Ms. Beverly Paschal, M.A., a marriage and family therapist, and Dr. Richard

11   Harris, a pain management physician. (Doc. # 124-1 at 1-4.) Plaintiff's expert disclosure

12   indicated that these witnesses may be called to testify about her medical treatment, the

13   necessity of future mental health treatment, and causation. (*Id*.)

14         On December 17, 2012, Minnesota Life secured an order from the court requiring

15   Plaintiff to submit to two independent mental health examinations (IMEs) under Federal Rule

16   of Civil Procedure 35: first, by a psychologist, Dr. Antonuccio, to administer psychological

17   testing; and second, by a psychiatrist, Dr. Piasecki, to evaluate Plaintiff's condition from a

18   medical physician's perspective. (*See* Doc. # 98.) Following the examinations, both doctors

19   prepared reports which were provided to Plaintiff's counsel pursuant to Rule 35(b)(1).

20   (*See* Doc. # 124 at 5:15-16.) On January 9, 2013, Minnesota Life served its expert witness

21   disclosure, listing (among others) Dr. Piasecki as a testifying expert. (Doc. # 124-1 at 8-9.)

22   Notably, Minnesota Life did not identify Dr. Antonuccio as a testifying expert; it did, however,

23   list his report as one of its exhibits. (*Id*.) Instead, Minnesota Life elected only to retain

24   Dr. Antonuccio as a consultant for purposes of conducting the psychological testing. (Doc. #

25   124 at 5:14-15.)

26

27        [2] Plaintiff sought an injunction to stay the foreclosure proceedings, and pursuant to stipulation and order, Wells Fargo agreed to refrain from conducting a trustee's sale. (*See* Docs. # 12, # 16.)

28

1  On January 15, 2013, Plaintiff issued a deposition subpoena to Dr. Antonuccio. (Doc. #
2  124-1 at 12-16.) Then, on January 16, 2013, Plaintiff served a Supplemental Disclosure of
3  Expert Witnesses, identifying Dr. Antonuccio. (Doc. # 124-1 at 18-19.) The supplemental
4  disclosure acknowledges that Dr. Antonuccio was retained by Minnesota Life to conduct an
5  IME and was not retained by Plaintiff. (*Id*. at 19.) The supplemental disclosure further indicates
6  that Plaintiff seeks to call Dr. Antonuccio "to testify regarding his evaluation of Plaintiff
7  pursuant to [the IME] he conducted on December 20, 2012." (*Id*.)

8  Minnesota Life demanded that Plaintiff withdraw her supplemental disclosure, and
9  Plaintiff refused. (*See* Doc. # 124 at 5:24-26, 6:1-3; Doc. # 124-1 at 22-26.) The instant motions
10  followed.

## II. DISCUSSION

### A. Summary of Argument

13  First, Minnesota Life contends that pursuant to Federal Rules of Civil Procedure 35 and
14  26(b)(4)**,** Plaintiff is precluded from taking Dr. Antonuccio's deposition because he is a non-
15  testifying consultant/expert whom Minnesota Life has not disclosed as a testifying expert
16  witness, and Plaintiff cannot demonstrate that "exceptional circumstances" exist so as to justify
17  the deposition. (Doc. # 124 at 6**.**) Minnesota Life further argues that establishing "exceptional
18  circumstances" is a "heavy burden" which requires a showing that it would be "impracticable
19  for the party seeking discovery to obtain facts or opinions on the same subject by other means."
20  (*Id*. at 7-9.) Minnesota Life asserts that this is not the case because Plaintiff disclosed her own
21  two medical experts to testify on her behalf about Plaintiff's medical and/or mental health
22  condition-which is the area that Dr. Antonuccio was retained to evaluate. (*Id*. at 9.)  Instead,
23  Minnesota Life urges that it would be unfair to let Plaintiff, who failed to retain her own expert
24  to perform additional psychological testing, to now piggyback onto the consulting expert which
25  Minnesota Life paid to retain in order to support her emotional distress claim. (*Id*. at 8.) To
26  that end, Minnesota Life seeks a protective order prohibiting Plaintiff from deposing or seeking
27  documents from Dr. Antonuccio. (*Id*. at 10.)

28

Second, Minnesota Life contends that Plaintiff should not be permitted to identify Dr. Antonuccio as an expert because: (1) her supplemental disclosure was served after her expert disclosure deadline; and, more importantly, (2) as argued above, Plaintiff cannot demonstrate the "exceptional circumstances" required under Rule 26(b)(4)(D) to allow Plaintiff to call Minnesota Life's non-testifying, consulting expert as a witness for Plaintiff. (Doc. # 124 at 11-13.) Minnesota Life thus seeks to strike Plaintiff's supplemental disclosure naming Dr. Antonnucio. (*Id*.)

In her opposition to Minnesota Life's motions, Plaintiff first argues that the IMEs were "indivisible" and Minnesota Life's expert, Dr. Piasecki, clearly collaborated with Dr. Antonuccio, but the extent of this collaboration cannot be determined without deposing Dr. Antonuccio. (Doc. # 128 at 2-4.) Therefore, Plaintiff contends she should be able to depose Dr. Antonuccio to ascertain the basis of his psychological opinions which were relied on by Dr. Piasecki in completing her psychiatric examination. (*Id*.) She insists she needs this information to adequately cross-examine Dr. Piasecki. (*Id*.) In addition, Plaintiff claims that "exceptional circumstances" do exist so that she should be allowed to depose and designate Dr. Antonuccio as an expert witness. (*Id*.) Specifically, Plaintiff argues that "exceptional circumstances" exist when a non-testifying expert's report will be used by a testifying expert as the basis for that expert's opinion. (*Id*.) Under these circumstances, Plaintiff urges that a party should be able to depose the non-testifying expert. (*Id*. at 5.) Plaintiff indicates that she seeks to ask Dr. Antonuccio in order to "determine the extent to which Piasecki's opinion has been shaped or influenced by Antonuccio's examination and report" and "to determine which aspects of his report she ignored and rejected."

With respect to the timeliness argument, Plaintiff responds that her supplemental disclosure was justified because the IME was not conducted and the reports not disclosed until after Plaintiff's expert disclosure deadline. (Doc. # 128 at 8.)

Both parties agree that whether Plaintiff is entitled to depose Dr. Antonuccio hinges on an interpretation of Rule 26(b)(4)(D)'s "exceptional circumstances" requirement which

4

1  necessitates a showing that it is impracticable for the party to obtain facts or opinions on the
2  same subject by other means. Not surprisingly, the parties disagree as to whether the
3  "exceptional circumstances" exist here.

4  **B. The Court Adopts the "Exceptional Circumstances" Standard**

5          Under Rule 26(b)(4), a party may employ two types of experts: (a) those experts
6  identified as "an expert whose opinions may be presented at trial" which the court will refer to
7  as a "testifying" expert; and (b) experts "retained or specially employed...in anticipation of
8  litigation or to prepare for trial and who [are] not expected to be called as a witness at trial,"
9  which the court will refer to as a "non-testifying" or "consulting" experts. Fed. R. Civ. P.
10 26(b)(4)(A), (D). With respect to non-testifying or consulting experts, a party may "discover
11 facts known or opinions held by" such an expert only "as provided in Rule 35(b)" or "on
12 showing exceptional circumstances under which it is impracticable for the party to obtain facts
13 or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D).

14          Rule 35 governs physical and mental examinations in cases where a party's physical or
15 mental condition is at issue. This rule provides that the party who moved for such an
16 examination must provide a copy of the examiner's report which contains the examiners
17 diagnoses, conclusions and test results, upon request. Fed. R. Civ. P. 35(b)(1), (2). Rule 35 itself
18 does *not* provide for taking the deposition of the examiner, but merely states that it "does not
19 preclude...deposing an examiner under other rules." Fed. R. Civ. P. 35(b)(6). Moreover, Rule
20 35 does not address whether the examined party may call the examiner to testify at trial as an
21 expert. It is clear that "[t]he *party conducting the examination* may call the examiner to testify
22 as an expert witness[.]" Comments to Fed. R. Civ. P. 35 (emphasis added). However, "[t]he
23 courts are split as to whether *the party who was examined* may call the examiner as an expert."
24 *Id*. (emphasis added).

25          Minnesota Life did produce Dr. Antonnucio's report to Plaintiff pursuant to Rule 35(b),
26 but it is undisputed that Minnesota Life never designated Dr. Antonuccio as an expert witness
27 in this case. Therefore, Dr. Antonuccio is only a non-testifying/consulting expert for Minnesota

28                                                    5

Life. The court is thus tasked with determining whether Plaintiff may depose Dr. Antonnuccio and whether she was permitted to designate him as an expert to testify at trial. As will be set forth in detail below, the court adopts the "exceptional circumstances" approach to determine this issue, and finds that such "exceptional circumstances" are not present here.

### 1. Instructive Cases

#### a. *Lehan v. Ambassador Programs, Inc.*

The case that appears to be cited most frequently on this issue is *Lehan v. Ambassador Programs, Inc.*, 190 F.R.D. 670 (E.D. Wash. 2000). In that case, the court ordered that a Rule 35 IME should proceed, as the court did here. *Id.* at 670. The examiner, Dr. Klein, was thereafter initially named as the defendant's expert witness. *Id.* at 670-71. The plaintiff received Dr. Klein's report pursuant to Rule 35. *Id.* at 671. The defendant later advised the court it was not going to call Dr. Klein as an expert witness because his psychological opinions were not relevant to the plaintiff's Age Discrimination in Employment Act claim because emotional distress damages are not recoverable in such cases. *Id.* The plaintiff, however, like Plaintiff here, proceeded to identify the examiner in his own expert witness disclosure. *Id.* The defendant then sought to exclude Dr. Klein's report and to preclude the plaintiff from calling Dr. Klein as the plaintiff's expert witness. *Id.*

The *Lehan* court started its analysis with the observation that each party may retain and call expert witnesses to support their case with testimony at trial, and each party may also retain an expert to consult on a case without calling that person as a witness at trial. *Id.* In a case such as this one, where the Plaintiff alleges emotional distress damages and her physical and mental health are at issue, a party may also seek an examination performed by a physician retained pursuant to Rule 35. With respect to non-testifying or consulting experts, the *Lehan* court correctly pointed out that the only way another party may discover their opinions is: "1) as provided in Rule 35, and 2) only 'upon a showing of exceptional circumstances under which it is impracticable for the party *seeking discovery* to obtain facts or opinions on the same subject by other means." *Id.* (internal quotation marks omitted) (quoting Fed. R. Civ. P.

6

26(b)(4)(B)). The *Lehan* court, like this court, was tasked with determining whether the plaintiff was permitted to call the defendant's retained Rule 35 examiner to testify when the defendant was not going to disclose the examiner as his own witness and instead was only utilizing the examiner as a non-testifying or consulting expert.

The *Lehan* court went on to discuss three approaches that have been applied by courts to this scenario: (1) the "entitlement" approach-by submitting to a Rule 35 examination, a plaintiff is "entitled" to "call an opposing party's Rule 35 expert, despite the opposing party's desire not to have the expert testify"; (2) the "discretionary" or "balancing" approach-"involv[es] a balancing of the interests of the party and the court against the potential for prejudice to the party who hired the expert, but who does not wish to use that expert at trial"; and (3) the "exceptional circumstances" approach- "rel[ies] on a combination of Rule 26(b)(4)(B) and Rule 26(b)(4)(A)" and "courts...recognize[ ][that there are] interests weighing against allowing an opposing party to depose or to call at trial a consultative, non-testifying expert witness and will only allow such testimony in 'exceptional circumstances.'" *Id*. at 671-72 (internal quotation marks and citations omitted).

In *Lehan*, the court adopted the "exceptional circumstances" approach, finding that it "preserves the fundamental principles governing litigation while enabling the court to exercise its discretion to permit the calling of the Rule 35 examiner by the examined party upon the proper showing when justice requires." *Id*. at 674. This court finds the *Lehan* court's reasoning persuasive:

> [The "exceptional circumstances" approach]...recognizes certain underlying principles of litigation: that each party is free to choose its expert witnesses to consult with and to exercise its judgment on whether or not to call the expert witness at trial; that expert witnesses once retained remain the witness of the retaining party; that fair opportunity to evaluate the merits of the case and to conduct discovery to prepare for trial require designation of expert witnesses, delivery of the Rule 26(a)(2) expert report, and identification of expert witnesses to be called at trial; that, correspondingly, each party has the duty in preparing the case for trial to identify its expert witnesses who might be called at trial; and, that the court has the discretion to permit one party to call as a witness at trial the opposing party's expert witness when there has been a showing of "exceptional circumstances."

*Id*. at 672.

7

The *Lehan* court also noted: "The benefit to the party subjected to a Rule 35 exam is the right to obtain a report of the Rule 35 examiner and discover the opinions expressed therein in order to prepare for trial." *Id*. (citing Fed. R. Civ. P. 35(b)(1)). "That is all that Rule 35 guarantees, and that is confirmed by Rule 26(b)(2)(B)." *Id*. Exercising its discretion, the *Lehan* court found the plaintiff did not present "exceptional circumstances" that would justify him calling Dr. Klein as an expert witness at trial. *Id*. at 674.

### b. *Hammons v. Simmons*

The *Lehan* analysis was adopted in *Hammons v. Simmons*, No. 3:09-cv-217-S, 2010 WL 3490994 (W.D. Ky. 2010). In that case, the defendants sought and secured an IME of plaintiff Hammons. *Id*. at *1. The examiner's report was provided to the plaintiffs, but the defendants did not disclose the examiner as an expert witness. *Id*. The plaintiffs then supplemented their expert witness disclosure to identify the examiner, as is the case here. *Id*. The defendants then moved to strike the supplement expert witness disclosure, arguing that the plaintiffs could not call defendants' non-testifying consulting expert. *Id*. The court agreed with the defendants, and citing *Lehan* and other Sixth Circuit authority, determined there were no "exceptional circumstances" that persuaded the court to allow the plaintiffs to call the examiner. *Id*. at *1-2.

### c. *Estate of Manship v. U.S.*

In *Estate of Manship v. U.S.*, 240 F.R.D. 229 (M.D. La. 2006), the court dealt with a scenario where the plaintiff sought to depose the government's consulting experts who were alleged to have assisted the government's testifying expert. *Id*. at 230-31. The plaintiff's position in that case is somewhat analogous to the position taken by Plaintiff in this case: Plaintiff seeks to depose Dr. Antonuccio, who authored the Rule 35 report, which Plaintiff contends was relied upon by Minnesota Life's testifying expert, Dr. Piasecki. In *Estate of Manship*, the court, relying on Rule 26(a)(2)(B), ruled that the plaintiff was not entitled to take the depositions of the government's consulting experts who were alleged to have assisted the testifying expert. *Id*. at 232.

While the court recognized that "'exceptional circumstances' may exist where a non-

testifying expert's report has been used by a testifying expert as the 'basis' for the testifying expert's opinion, or where there is evidence of 'substantial collaborative work' between a testifying expert and a non-testifying expert," the court determined that the evidence presented to it did not reveal that the testifying expert considered any input from the consultants so as to justify the plaintiff deposing the consultants. *Id.* at 232, 239.[3]

### d. *Bankruptcy Estate of Lee v. Burlington Northern Santa Fe R. Co.*

In *Bankruptcy Estate of Lee v. Burlington Northern Santa Fe R. Co.*, No. 07C5829, 2010 WL 894056 (N.D. Ill. 2010), the personal injury plaintiff disclosed his treating physician as an expert. *Id.* at *1. The plaintiff also underwent a court-ordered Rule 35 IME. *Id.* As in the instant matter, the examiner's report was provided to the plaintiff by the defendant, and, as in this case, the examiner was not disclosed by the defendant as an expert witness. *Id.* Nonetheless, the plaintiff, similar to Plaintiff Downs here, added the examiner as a potential witness at trial. *Id.* The defendant, like Minnesota Life, then moved for a protective order seeking to preclude the plaintiff from calling the examiner as a witness at trial absent a demonstration of "exceptional circumstances." *Id.*

The court reviewed the three approaches utilized in determining this issue, as discussed in *Lehan, supra. Id.* at *2. The court rejected application of the "entitlement" approach, finding that it was not consistent with Rule 35. *Id.* at *3. The court then found that whether it applied

---

[3] *Estate of Manship* also discussed an issue that is not presented here: "whether an expert initially designated as a testifying expert witness, but later re-designated as a non-testifying/consulting expert, may be deposed[.]" *Estate of Manship*, 240 F.R.D. at 233. The court noted a split of authority on this issue. *Id.* In this discussion, the court confirmed that the opinions held by non-testifying or consulting witnesses may only be discovered by the opposing party as provided in Rule 35(b) or upon a showing of "exceptional circumstances." *Id.* The court pointed out that there is a line of cases that hold that the "exceptional circumstances" approach does *not* apply "when a testifying expert witness designation has been withdrawn and a witness is redesignated as a non-testifying expert" and applies the "balancing" or "discretionary" approach instead. *Id.* (citing *House v. Combined Ins. Co. of Amer.*, 168 F.R.D. 236 (N.D. Iowa 1996)). *Estate of Manship* rejected this line of cases and applied the "exceptional circumstances" approach to this scenario as well. *Id.* at * 237. Notably, the *Lehan* court also rejected the *House* line of cases and applied the "exceptional circumstances" test when the defendant had initially designated the examiner as a witness but subsequently sought to withdraw their designation. *Lehan*, 190 F.R.D. 670; *see also FMC Corp. v. Vendo Co.*, 196 F.Supp.2d 1023 (E.D. Cal. 2002) (also rejecting *House* and applying "exceptional circumstances" approach in a "re-designation" case that did not involve a Rule 35 examiner).

the "exceptional circumstances" or "balancing" approach, the result was the same: the plaintiff should not be permitted to call the examiner as a witness at trial. *Id*. The court concluded the plaintiff did not establish "exceptional circumstances" that would justify the plaintiff calling the examiner. *Id*. Nor did the court find that a "balancing" of "the prejudice to [the defendant] of placing its prior retention of [the examiner] in front of the jury outweigh[ed] any benefit to Plaintiff from supplementing [the treating physician's] opinion." *Id*.

### 2. Application to the Instant Matter

The court agrees with the analysis set forth in *Lehan* and adopts the "exceptional circumstances" approach and the reasoning set forth therein. *See Lehan*, 190 F.R.D. at 672-674. The court concurs with *Lehan* that this approach preserves "the fundamental principles governing litigation." *Id*. at 674. Having done so, the court finds Plaintiff has not met the "heavy burden" of establishing "exceptional circumstances" in this instance.

Plaintiff presents a persuasive argument that she should be allowed to depose Dr. Antonuccio because Minnesota Life's designated expert, Dr. Piasecki, relied on Dr. Antonuccio's opinions (less persuasive, however, that she should be allowed to call him as an expert witness at trial). If Dr. Piasecki is relying on Dr. Antonuccio's report, then theoretically, to be able to effectively cross-examine Dr. Piasecki, Plaintiff should first be able to depose Dr. Antonuccio.

While persuasive, the court, in its discretion, finds that this argument is insufficient to carry the "heavy burden" which is placed on a party seeking to depose an opponent's non-testifying/consulting expert witness-even one who conducted a Rule 35 examination. Plaintiff argues that she needs to depose Dr. Antonuccio in order to effectively cross-examine Dr. Piasecki; however, the court finds that Plaintiff can accomplish this by relying on the contents of Dr. Antonuccio's report, which she has been provided.

Moreover, to the extent Plaintiff argues that she should be able to depose and call Dr. Antonuccio as a witness because Dr. Piasecki's opinions are derived from Dr. Antonuccio so that their opinions can be considered collaborative, the court rejects this argument. The

court was provided Dr. Piasecki's report at the hearing on Minnesota Life's motions. Other than referencing receipt and review of Dr. Antonuccio's report, it does not appear that Dr. Piasecki made any further comment on the report to demonstrate reliance on it in forming her own opinions. The court acknowledges that a collaborative arrangement may constitute "exceptional circumstances," but finds, like the court in *Estate of Manship*, that the record simply does not support an argument that the relationship between Dr. Piasecki and Dr. Antonuccio was collaborative, let alone "substantially" collaborative. *See Estate of Manship*, 240 F.R.D. at 232, 237-239

Finally, the court cannot conclude that Plaintiff is unable to obtain equivalent information essential to her case preparation from other sources. Plaintiff has designated her own experts, Dr. Harris and Ms. Paschal, from whom she intends to elicit testimony regarding her alleged emotional distress. (*See* Doc. # 124-1 at 2-3.) Additionally, Plaintiff can consult with her own experts regarding the impact of Dr. Antonuccio's report, both as it stands alone and as to whether Dr. Piasecki relied on any of Dr. Antonuccio's opinions. She can also question Dr. Piasecki herself about any reliance on Dr. Antonuccio's opinions.

Plaintiff relies on several cases to support her argument that Dr. Antonuccio should be deposed and called to testify at trial. The court finds these cases are distinguishable from the instant matter. The court will discuss several of these cases, in turn.

First, Plaintiff relies on *Hartford Fire Ins. Co. v. Pure Air on the Lake Ltd. Partnership*, 154 F.R.D. 202 (N.D. Ind. 1993). While that case did state that "exceptional circumstances" *might* be established where a non-testifying expert's report is used as a basis for an expert opinion, the court reiterated that these issues need to be resolved on a case-by-case basis. *See id*. at 208. In *Hartford*, the court ultimately determined that the party seeking discovery did not meet the "heavy burden" of showing "exceptional circumstances" because they could not demonstrate what they needed from the consultant's report that could not be obtained by other means. *Id*. at 210. The court has reached a similar conclusion here.

Next, Plaintiff relies on *Heitmann v. Concrete Pipe Machinery*, 98 F.R.D. 740 (E.D. Mo.

1983). That case is distinguishable from the instant case because there the record was supported by evidence that the testifying expert had read and considered the non-testifying consultant's report and used it in forming his own opinion. *Id.* at 742. Here, the only information the court has is that Dr. Piasecki received and reviewed Dr. Antonuccio's report; there is no indication in the record regarding her alleged reliance on the report in forming her own opinions. If Plaintiff had additional information in this respect, she should have provided it to the court in support of her opposition.

Plaintiff also cites *Delcastor, Inc. v. Vail Associates, Inc.*, 108 F.R.D. 405, 408 (D. Colo. 1985). This case involved a scenario where one party's expert was able to inspect the scene of a mud slide the day after the incident occurred, whereas the other party's expert was not able to inspect the site until several days later. The court found that "exceptional circumstances" existed because the conditions changed significantly between the two inspections so that the expert first on the scene had information not able to be discovered by any other means. That is not the situation presented here.

The court finds that this case is more factually analogous to *Lehan*, *Hammons*, *Estate of Manship,* and *Bankruptcy Estate of Lee*, and like the courts in those cases, this court finds Plaintiff has not met the "heavy burden" of establishing "exceptional circumstances" exist to justify allowing her to depose or call Dr. Antonuccio as a witness at trial. Because the court comes to this conclusion, it need not reach the issue of whether or not Plaintiff's supplemental disclosure was timely.

///

///

///

///

///

///

///

12

### III. CONCLUSION

The court has concluded that the "exceptional circumstances" approach will preserve the "fundamental principles governing litigation" with respect to a party's ability to retain experts, and applying this approach has determined that Plaintiff has not established that such "exceptional circumstances" exist in the present case.

Therefore, Minnesota Life's Emergency Motion for Protective Order (Doc. # 123) and Motion to Strike Plaintiff's Designation of Dr. Antonuccio as Testifying Expert (Doc. # 124) are **GRANTED**.

**IT IS SO ORDERED**.

DATED: February 1, 2013

_____
WILLIAM G.  COBB
UNITED STATES MAGISTRATE JUDGE

13