UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \* \* \*

| | |
|---|---|
| LINDA DOWNS, ) | |
| ) | 3:11-cv-00885-LRH-WGC |
| Plaintiff, ) | |
| ) | ORDER |
| vs. ) | |
| ) | |
| RIVER CITY GROUP, LLC; et al., ) | |
| ) | |
| Defendants. ) | |

Before the court is defendant Minnesota Life Insurance Company's ("Minnesota Life") motion for summary judgment. Doc. #155.[1] Plaintiff Linda Downs ("Downs") filed an opposition (Doc. #163) to which Minnesota Life replied (Doc. #184).

**I.      Factual and Procedural History**

In July, 2005, Downs, along with her husband Ronald, purchased real property through a mortgage note and deed of trust originated by defendant River City Group, LLC ("River City"). In early December, 2009, Downs and her husband purchased mortgage payment protection insurance advertised by defendant Wells Fargo Bank, NA ("Wells Fargo") and underwritten by defendant Minnesota Life. The insurance policy provided for twelve (12) monthly payments of $2,398.23 - the amount of the Downs' mortgage - to Wells Fargo in the event of Ronald's death.

On May 31, 2010, Ronald passed away. On June 10, 2010, Downs contacted both Wells Fargo and Minnesota Life and notified them of Ronald's passing and requested the payment of the mortgage payments pursuant to the mortgage insurance policy. On June 17, 2010, Minnesota

---

[1] Refers to the court's docket number.

1  Life acknowledged receipt of Downs's claim and requested additional information including: (1)
2  a certified death certificate; (2) a completed Health History Information Request form; and (3) a
3  completed Health Insurance Portability and Accountability Act ("HIPAA") authorization form.
4  Downs sent the request information on July 6, 2010, and Minnesota Life received the
5  information on July 9, 2010.
6        After receiving the information, Minnesota Life communicated to Downs that because
7  Ronald had died within the first two years of the policy's effective date, the coverage was
8  contestable, and Minnesota Life would be conducting a routine coverage review. As part of its
9  coverage investigation, Minnesota Life requested additional medical records from Dr. John
10 Williamson ("Dr. Williamson") and the Northern Nevada Medical Center ("NNMC").
11 Minnesota Life received the records from Dr. Williamson on July 29, 2010, and received the
12 records from NNMC on August 11, 2010.
13       On August 18, 2010, Minnesota Life completed its contestability review, approved
14 Downs's claim for payment, and sent Wells Fargo a check for $9,572.92 to cover the mortgage
15 payments from May 2010, through August 2010. Thereafter, Minnesota Life made payments in
16 accord with the payment schedule as prescribed under the policy. However, prior to the
17 disbursement of funds from Minnesota Life, defendant Wells Fargo initiated non-judicial
18 foreclosure proceedings against the underlying property for failure to pay the mortgage payments
19 since May 2010.
20       Subsequently, Downs filed a complaint alleging ten causes of action against all
21 defendants: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional
22 distress; (3) breach of contract; (4) breach of the implied covenants of good faith and fair dealing;
23 (5) unfair claims practices; (6) conspiracy to defraud; (7) negligence; (8) invasion of privacy;
24 (9) unjust enrichment; and (10) quite title. Doc. #1, Exhibit A. Thereafter, Minnesota Life filed
25 the present motion for summary judgment. Doc. #155.[2]
26
27     [2] In its motion for summary judgment, Minnesota Life does not address or move for summary
   judgment on Downs's sixth cause of action for conspiracy to defraud, eighth cause of action for invasion
28 of privacy, or tenth cause of action for quiet title. *See* Doc. #155.

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.,* 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J,* 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252.

///

**III.    Discussion**

    **A.    Intentional/Negligent Infliction of Emotional Distress**

To establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) extreme or outrageous conduct by defendant; and (2) that plaintiff suffered severe emotional distress. *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999). Extreme and outrageous conduct is that which is "outside all possible bounds of decency" and is intolerable in civil life. *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 25 (Nev. 1998).

A plaintiff can recover for negligent infliction of emotional distress if she is a direct victim of defendant's negligence and that the alleged negligence resulted in "emotional distress as part of the damages suffered." *Shoen v. Amerco*, 896 P.2d 469, 477 (Nev. 1995). However, "there still must be an underlying injury separate from the emotional harm" to establish a claim for negligent claim of emotional distress. *Kennedy v. Carriage Cemetery Servs.,* 727 F.Supp.2d 925, 935 (D. Nev. 2010).

In her complaint, Downs alleges that defendants initiated non-judicial foreclosure proceedings against her when she was not in default of her loan. The court finds that these allegations are insufficient to state a claim for intentional and negligent infliction of emotional distress against defendant Minnesota Life. Specifically, it is undisputed that Minnesota Life only conducted a routine investigation of Ronald's death pursuant to the mortgage payment protection policy's contestability provisions. It is further undisputed that Down's husband died within the contestability period. Thus, Minnesota Life's conduct, in compliance with the policy, does not rise to the level of extreme or outrageous conduct. Further, Downs does not establish any underlying separate physical injury to support her claim of negligent infliction of emotional distress. Finally, it is undisputed that Minnesota Life took no action in carrying out the non-judicial foreclosure of her property. Therefore, the court shall grant Minnesota Life's motion as to these claims.

    **B.    Breach of Contract**

To prevail on a breach of contract claim, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages resulting from defendant's

breach. *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006); *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

In her complaint, Downs alleges that Minnesota Life breached the mortgage payment protection policy because it failed to timely pay the mortgage payments to Wells Fargo prior to Wells Fargo initiating foreclosure proceedings. *See* Doc. #1.

The relevant contractual provision of the underlying policy provides that "the monthly benefit will be payable within 30 days after we receive proof satisfactory to us that you died . . . while insured under this certificate . . . ." Doc. #155, Ex. 1, p. 13. The court interprets this provision to require satisfactory proof that (1) the decedent died, and (2) the decedent was indeed insured under the policy at the time of his death. As to the second element, Minnesota Life argues that the insurance policy contained a contestability clause during the first two years of the policy's life, and that it simply conducted a timely contestability review prior to approving Downs's claim. The court agrees.

Under Nevada law, an insurance policy may include a contestability clause provision of not longer than the first two years of the policy's life. *See* Nev.Rev.Stat. § 688A.080. Further, an insurer is entitled to a reasonable amount of time to conduct a contestability investigation. *See Nixon v. Lincoln Nat'l Ins. Co*, 131 F.Appx. 188, 190 (11th Cir. 2005) (holding four months was a reasonable amount of time for a contestability investigation); *Am. Gen. Life Ins. Co. v. Broughton*, No. CV 06-0488-S-MHW, 2008 WL 4977402, at *4 (D.Idaho June 3, 2008) (holding that "the purpose of incontestability clauses is to allow the insurer 'a reasonable opportunity to investigate the statements made by the applicant in procuring the policy'"). These contestability investigations are routine and are "a customary practice in the insurance field." *Braughton,* 2008 WL 4977402, at *4 (citing *Ressler v. Gen. Am. Life Ins. Co.,* 561 F.Supp.2d 691, 695 (E.D.Tex. 2007).

In the instant case, Minnesota Life, upon receipt of required medical records on August 11, 2010, completed its contestability investigation and paid out all owed benefits on August 18, 2010, only seven days after receiving the requested information. The whole process, starting with Downs filing for the benefits under the policy in June lasted only two months which

1  included the weeks of time Minnesota Life waited for Downs to produce the initial required
2  documentation. Thus, because Minnesota Life had a legal right to conduct its contestability
3  investigation and the investigation was conducted within a reasonable amount of time, the court
4  finds that there was no breach of the insurance policy. Accordingly, the court shall grant
5  Minnesota Life's motion as to this claim.

### C. Breach of Implied Covenants of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205). To establish a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show that: (1) the plaintiff and defendant were parties to a contract; (2) the defendant owed a duty of good faith and fair dealing to the plaintiff; (3) the defendant breached his duty by performing in a manner unfaithful to the purpose of the contract; and (4) the plaintiff's justified expectations were denied. *See Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995) (citing *Hilton Hotels Corp. v. Butch Lewis Prod. Inc.*, 808 P.2d 919, 922-23 (Nev. 1991).

In the instant case, the parties do not dispute that Minnesota Life paid out the full benefit to Downs. Furthermore, this court has found Minnesota Life acted reasonably and timely in its review and approval of Downs's claim. Therefore, the court finds that Minnesota Life did not breach the implied covenants as a matter of law. Accordingly, the court shall grant Minnesota Life's motion as to this claim.

### D. Unfair Claims Practices

In her complaint, Downs alleges Minnesota Life acted in violation of the Nevada Unfair Claims Practices Act, found at NRS 686A.310 *et seq*. *See* Doc. #1.

Although, Minnesota Life addresses each individual subsection of the act - NRS 686A.310(a)-(i), (l) and (n) - in its motion for summary judgment, the court finds that individual treatment of each statutory provision is unnecessary because all of the claims are predicated on the untimeliness of the dispensation of benefits by Minnesota Life. As this court has found that the benefit payments were not untimely, the court likewise finds that Minnesota

1  Life did not violate Nevada's Unfair Claim Practices Act as a matter of law. Accordingly, the
2  court shall grant Minnesota Life's motion as to this issue.

### E. Negligence

In order to allege a claim for negligence, a plaintiff must show: (1) a duty owed by defendants to plaintiff; (2) a breach of that duty by defendants; (3) causation; and (4) damages. *See Hammerstein v. Jean Dev. W.*, 907 P.2d 975, 977 (Nev. 1995).

In her complaint, Downs alleges that Minnesota Life breached its duty to act in a timely manner with regards to her claim. As this court has found that the benefit payments were not untimely, the court likewise finds that Minnesota Life did not breach its duty to act in a timely manner. Accordingly, the court shall grant Minnesota Life's motion as to this issue.

### F. Unjust Enrichment

To set forth a claim for unjust enrichment, a plaintiff must allege that a defendant unjustly retained money or property of another against fundamental principles of equity. *See Asphalt Prods. Corp. v. All Star Ready Mix*, 898 P.2d 699, 700 (Nev. 1995). An unjust enrichment claim is established where there is "a benefit conferred on the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention by the defendant of such benefit." *Topaz Mut. Co. v. Florence Marsh*, 839 P.2d 606, 613 (Nev. 1992) (citation omitted). However, an action predicated on an unjust enrichment theory cannot be brought when there is an express, written contract between the parties. *Leasepartners Corp. v. Robert L. Brooks Trust,* 942 P.2d 182, 187 (Nev. 1997).

In the instant case, Downs's relationship with Minnesota Life is defined by the express written contract challenged in her claim for breach of contract. Therefore, her claim is barred as a matter of law. *See Leasepartners Corp.,* 942 P.2d at 187. Accordingly, the court shall grant Minnesota Life's motion as to this claim.

///
///
///
///

IT IS THEREFORE ORDERED that defendant's motion for summary judgment (Doc. #155) is GRANTED. The clerk of court shall enter judgment in favor of defendant Minnesota Life Insurance Company and against plaintiff Linda Downs on plaintiff Linda Downs's first cause of action for intentional infliction of emotional distress; second cause of action for negligent infliction of emotional distress; third cause of action for breach of contract; fourth cause of action for breach of the implied covenants of good faith and fair dealing; fifth cause of action for violation of Nevada's Unfair Claim Practices Act; seventh cause of action for negligence; and ninth cause of action for unjust enrichment.

IT IS SO ORDERED.

DATED this 22nd day of August, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE