UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| LINDA DOWNS, | ) | |
| | ) | |
| Plaintiff, | ) | 3:11-cv-0885-LRH-WGC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RIVER CITY GROUP, LLC; et al., | ) | |
| | ) | |
| Defendants. | ) | |

Before the court is plaintiff Linda Downs' ("Downs") motion for reconsideration of the court's order granting defendant Minnesota Life Insurance Company's ("Minnesota Life") motion for summary judgment (Doc. #207[1]). Doc. #209. Minnesota Life filed an opposition (Doc. #210) to which Downs replied (Doc. #211).

**I.      Facts and Procedural History**

In July, 2005, Downs, along with her husband Ronald, purchased real property through a mortgage note and deed of trust originated by defendant River City Group, LLC ("River City"). In early December, 2009, Downs and her husband purchased mortgage payment protection insurance advertised by defendant Wells Fargo Bank, NA ("Wells Fargo") and underwritten by defendant Minnesota Life. The insurance policy provided for twelve (12) monthly payments of $2,398.23 - the amount of the Downs' mortgage - to Wells Fargo in the event of Ronald's death.

---

[1] Refers to the court's docket entry number.

On May 31, 2010, Ronald passed away. On June 10, 2010, Downs contacted both Wells Fargo and Minnesota Life and notified them of Ronald's passing and requested the payment of the mortgage payments pursuant to the mortgage insurance policy. On June 17, 2010, Minnesota Life acknowledged receipt of Downs's claim and requested additional information including: (1) a certified death certificate; (2) a completed Health History Information Request form; and (3) a completed Health Insurance Portability and Accountability Act ("HIPAA") authorization form. Downs sent the request information on July 6, 2010, and Minnesota Life received the information on July 9, 2010.

After receiving the information, Minnesota Life communicated to Downs that because Ronald had died within the first two years of the policy's effective date, the coverage was contestable, and Minnesota Life would be conducting a routine coverage review. As part of its coverage investigation, Minnesota Life requested additional medical records from Dr. John Williamson ("Dr. Williamson") and the Northern Nevada Medical Center ("NNMC"). Minnesota Life received the records from Dr. Williamson on July 29, 2010, and received the records from NNMC on August 11, 2010.

On August 18, 2010, Minnesota Life completed its contestability review, approved Downs' claim for payment, and sent Wells Fargo a check for $9,572.92 to cover the mortgage payments from May 2010, through August 2010. Thereafter, Minnesota Life made payments in accord with the payment schedule as prescribed under the policy. However, prior to the disbursement of funds from Minnesota Life, defendant Wells Fargo initiated non-judicial foreclosure proceedings against the underlying property for failure to pay the mortgage payments since May 2010.

Subsequently, Downs filed a complaint alleging ten causes of action against all defendants: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) breach of contract; (4) breach of the implied covenants of good faith and fair dealing; (5) unfair claims practices; (6) conspiracy to defraud; (7) negligence; (8) invasion of privacy; (9) unjust enrichment; and (10) quite title. Doc. #1, Exhibit A.

In response, Minnesota Life filed a motion for summary judgment (Doc. #155[2]) which was granted by the court (Doc. #207). Thereafter, Downs filed the present motion for reconsideration. Doc. #209.

**II.   Discussion**

Downs brings her motion to reconsider pursuant to Federal Rule of Civil Procedure 60(b). A motion under Rule 60(b) is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 887, 890 (9th Cir. 2000). A district court may reconsider a prior order where the court is presented with newly discovered evidence, an intervening change of controlling law, manifest injustice, or where the prior order was clearly erroneous. Fed. R. Civ. P. 60(b)(1)–(6); *United States v. Cuddy*, 147 F.3d 1111, 1114 (9th Cir. 1998); *School Dist. No. 1J, Multnomah County v. AcandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

In her motion for reconsideration, Downs raises two challenges to the court's order. First, Downs argues that the court erred in holding that Minnesota Life did not breach the mortgage insurance policy as a matter of law. Second, Downs argues that the court erred in holding that she had not proffered evidence of a physical injury sufficient to support her claim for negligent infliction of emotional distress. *See* Doc. #207. The court shall address each argument below.

**A.   Breach of Contract**

In her motion, Downs contends that the court erred in finding that defendant Minnesota Life did not breach the mortgage insurance policy as a matter of law by failing to pay the mortgage payments within thirty (30) days of receipt of Ronald's death certificate. *See* Doc. #209. The court disagrees.

///

---

[2] In its motion for summary judgment, Minnesota Life did not move for summary judgment on Downs's sixth cause of action for conspiracy to defraud, eighth cause of action for invasion of privacy, or tenth cause of action for quiet title.

3

In addressing Minnesota Life's motion for summary judgment (Doc. #155), the court found that Minnesota Life did not breach the mortgage payment protection policy as a matter of law because Minnesota Life timely paid the mortgage payments to defendant Wells Fargo after satisfactory proof of Ronald's death. *See* Doc. #207. In particular, the court found that "the relevant contractual provision of the underlying policy provides that 'the monthly benefit will be payable within 30 days after we receive proof satisfactory to us that you died . . . while insured under this certificate.'" *Id*. (internal citations omitted). "

In contrast to Downs' argument, this provision requires satisfactory proof that both (1) the decedent died, and (2) the decedent was indeed insured under the policy at the time of his death. As to the second element, the policy contained a contestability clause during the first two years of the policy's life that allowed Minnesota Life to conduct a timely review prior to approving Downs' claim, including requesting additional medical information about Ronald to determine whether he had a terminal illness or other uninsurable medical conditions at the time he signed the policy. *Id*.

The court recognizes that Minnesota Life received satisfactory proof that Ronald had died on July 9, 2010. However, Minnesota Life did not receive satisfactory proof that Ronald was insured under the policy at the time of his death until receipt of the requested medical records on August 11, 2010. Minnesota Life completed its contestability review and paid out all owed benefits on August 18, 2010, only seven days after receiving the requested information, and well within the thirty day time period contemplated in the policy. Thus, because Minnesota Life had a legal right to conduct its contestability review and all owed benefits were paid within thirty days of receipt of all requested information, it did not breach of the insurance policy. Accordingly, the court shall deny Downs' motion for reconsideration as to this issue.

**B.  Evidence of Physical Injury**

In the court's order on summary judgment, the court found that "Downs [did] not establish any underlying separate physical injury to support her claim of negligent infliction of emotional distress." Doc. #207. Downs argues that the court's finding was in error because there was evidence

1  of an excess of cortisol, allegedly resulting from her emotional distress, which caused her body to
2  retain fluids causing severe swelling. *See* Doc. #209.
3      The court has reviewed the documents and pleadings on file in this matter and finds that it
4  erred in finding that Downs did not provide evidence of a physical injury to support her claims for
5  intentional and negligent infliction of emotional distress. However, the court also finds that
6  reconsideration of the court's order is not warranted because Downs' claims still fail as a matter of
7  law. First, as the court has previously found - and which was not challenged in Downs' present
8  motion - Minnesota Life's conduct, in conducting a contestability review, does not rise to the level
9  of extreme or outrageous conduct. Second, it is undisputed that Minnesota Life took no action in
10 carrying out the non-judicial foreclosure of her property. Finally, there is no evidence of any
11 underlying negligent conduct by Minnesota Life. Thus, Minnesota Life is still entitled to summary
12 judgment on Downs' claims for intentional and negligent infliction of emotional distress.
13 Accordingly, the court shall deny Downs' motion for reconsideration.

15     IT IS THEREFORE ORDERED that plaintiff's motion for reconsideration (Doc. #209) is
16 DENIED.
17     IT IS SO ORDERED.
18     DATED this 4th day of December, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE