**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| LINDA DOWNS,<br>Plaintiff,<br>vs.<br>RIVER CITY GROUP, LLC, et al.,<br>Defendant(s). | ) | 3:11-cv-00885-LRH-WGC<br>**ORDER**<br>re: Minnesota Life Insurance Company's Emergency Motion to Strike Plaintiff's Motion to Compel (Doc. # 226) and Plaintiff's Motion to Compel (Doc. # 223) |

Before the court is Defendant Minnesota Life Insurance Company's ("Minnesota Life") Emergency Motion to Strike Plaintiff's Motion to Compel (Doc. # 226).[1] Minnesota Life's motion pertains to a Motion to Compel further discovery from Minnesota Life filed by Plaintiff Linda Downs ("Downs"). (Doc. # 223.)

**I. Factual Background of Litigation**

In July, 2005, Downs, along with her husband Ronald, purchased real property through a mortgage note and deed of trust originated by Defendant River City Group, LLC ("River City"). In early December, 2009, Downs and her husband obtained mortgage payment protection insurance advertised by Defendant Wells Fargo Bank, NA ("Wells Fargo") and underwritten by Defendant Minnesota Life. The insurance policy provided for twelve (12) monthly payments of $2,398.23 – the amount of the Downs' mortgage – to Wells Fargo in the event of Ronald's death.

On May 21, 2010, Ronald passed away. On June 10, 2010, Downs contacted both Wells Fargo and Minnesota life and notified them of Ronald's passing and requested the payment of the mortgage

[1] Refers to court's docket number.

payments pursuant to the mortgage insurance policy. On June 17, 2010, Minnesota Life acknowledged receipt of Downs's claim and requested additional information including: (1) a certified death certificate; (2) and completed Health History Information Request form; and (3) a completed Health Insurance Portability and Accountability Act ("HIPAA") authorization form. Downs sent the requested information on July 6, 2010, and Minnesota Life received the information on July 9, 2010.

After receiving the information, Minnesota life communicated to Downs that because Ronald had died within the first two years of the policy's effective date, the coverage was contestable, and Minnesota Life would be conducting a routine coverage review. As part of its coverage investigation, Minnesota Life requested additional medical record from Dr. John Williamson and the Northern Nevada Medical Center ("NNMC"). Minnesota Life received the records from Dr. Williamson on July 29, 2010, and received the records from NNMC on August 11, 2010.

On August 18, 2010, Minnesota Life completed its contestability review, approved Downs' claim for payment, and sent Wells Fargo a check for $9,572.92 to cover the mortgage payments from May 2010, through August 2010. Thereafter, Minnesota Life made payments in accord with the payment schedule as prescribed under the policy. However, prior to the disbursement of funds from Minnesota Life, Defendant Wells Fargo initiated non-judicial foreclosure proceedings against the underlying property for failure to pay the mortgage payments since May 2010.

Subsequently, Downs filed a complaint alleging ten causes of action against all defendants: (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3) breach of contact; (4) breach of the implied covenants of good faith and fair dealing; (5) unfair claims practices; (6)( conspiracy to defraud; (7) negligence; (8) invasion of privacy; (9) unjust enrichment; and (10) quiet title. (Doc. # 1, Exh. A.)

## II. Summary of Discovery Pertinent to Pending Motions

The complicated and extensive discovery history of this case as it pertains to the pending motions is summarized as follows.[2]

Pursuant to the court's scheduling order on the parties' joint request for extensions, discovery

[2] Motions to compel, emergency motions, etc., have seemed to be the rule in the discovery history of this case, not the exception. The record reflects this contentious litigation generated some 24 discovery motions.

closed on February 8, 2013 (Doc. # 82 at ¶ 2). The dispositive motion deadline was set for March 10, 2013 (*id.*, at ¶ 6). In approving the parties' stipulated deadlines, the court stated that "there will be no further extensions." (*Id*., at p. 3.)[3]

On January 3, 2013, prior to the deadline for completion of discovery, Plaintiff filed an emergency motion to compel discovery against Minnesota Life. (Doc. # 103.) Thereafter, Plaintiff filed another emergency motion as to Wells Fargo (Doc # 109). The court scheduled an expedited hearing on these two emergency motions (as well as several other discovery motions) for January 18, 2013 (Doc. # 111).

In setting the expedited hearing, this court entered a minute order requiring all counsel to appear in person. Additionally, this court stated:

> It is the Court's initial impression that the parties have failed to satisfy the "personal consultation" requirement attendant to the meet and confer condition of Local Rule 26-7(b). The parties are therefore instructed that prior to the January 18 hearing, the parties shall meet personally to attempt to at least narrow, if not resolve, their discovery disputes. The parties shall allocate sufficient time to this meeting to allow a meaningful and sincere discussion of the discovery issues. Thereafter, the parties shall submit a summary statement to the court identifying from each party's perspective what specific issues remain to be addressed by the court. This summary statement shall be due no later than **8:30 a.m. on Friday, January 18, 2013.**

(Doc. # 111; emphasis added.)

Taking the court's admonition regarding consultation to heart, the parties' discussions narrowed the discovery dispute between Plaintiff and Defendant Minnesota Life. This court conducted a hearing on the remaining discovery issues on January 18, 2013. (Doc. # 132 at 2-4.) Two of the discovery issues addressed and ruled on at the hearing constitute the essence of Plaintiff's current motion to compel (Doc. # 223) as well as an earlier motion on the same subject (Doc. # 103):

> • *MN Life should have produced the power point presentation from Eric Walton's training on CA law and claim handling. 10:5-14. This should have been provided long ago.*
>
> Order of the Court: **GRANTED**. If there is a power point presentation and if there is a typed "booklet" it should be produced. If there is not a power point presentation or typed "booklet" defendant shall file a notice

[3] The discovery deadline was initially scheduled for July 11, 2012. (Doc. # 40.) It was later extended to October 10, 2012. (Doc. # 70.) The last and final extension was February 8, 2013. (Doc. # 82.)

> of corrections as to the Walton deposition.
>
> * * *
>
> - *Ms. Schmidt was not prepared to discuss what the "administration manual" was for each of the plans identified in the marketing agreement between WF and MN Life. 230:17:24.*
>
> and
>
> - *Ms. Schmidt was generally unprepared to discuss the marketing agreement 234:6-237:5.*
>
> Order of the Court: **GRANTED**. It is appropriate to have Ms. Schmidt provide a declaration that states, in some fashion, that the administrative manual does not speak to claims handling procedures.

(Doc. # 132 at 2, 4.)

On April 24, 2013, approximately ten weeks after the deadline for completion of discovery passed, Plaintiff filed another motion to compel discovery against Minnesota Life. (Doc. # 188.)[4] On April 29, 2013, a motion to compel was filed as against Wells Fargo. (Doc. # 191.)

Wells Fargo filed a motion for stay of Plaintiff's discovery motions (Docs. ## 197, 198); Minnesota Life joined in the Wells Fargo motion to stay (Doc. # 200). In their motions, Wells Fargo and Minnesota Life sought a stay of briefing on Plaintiff's motions until after Senior District Judge Larry Hicks had decided the pending summary judgment motions. (Doc. # 197 at 2.) As of that date, the parties' respective motions for summary judgment (Minnesota Life, Doc. # 155; Downs, Doc. # 157; Wells Fargo, Doc. # 154) had been fully briefed and were considered ripe for resolution. L.R. 7-2(e).

The court conducted another expedited status conference on the motions for stay on May 16, 2013. After reviewing the briefing and hearing arguments of counsel, the court stayed briefing of Plaintiff's motions to compel (Doc. ## 188, 191). The court further stated that:

> The court is *not*, however, as counsel for Wells Fargo requested, denying and/or striking Plaintiff's motions to compel in their entirety; it is just that the court believes that consideration of a <u>motion to compel filed after the deadline for completion of discovery while dispositive motions are pending</u> runs counter to principles of judicial economy. If Judge Hicks grants Defendants' motions for summary judgment as to either or both parties, as noted above, obviously the motion to compel as to that party becomes moot. If, on the other hand, Judge Hicks denies Defendants'

---

[4] As discussed *infra*, the current motion to compel Plaintiff has filed against Minnesota Life (Doc. #223) is a re-filing of the issues in the predecessor motion (Doc. # 188), which motions in turn originally arose from an even earlier motion filed by Plaintiff, Doc. # 103. The court ruled on Doc. # 103 at the January 18, 2013, hearing. (Doc. # 132.)

> motions, the court will direct the parties to complete briefing on the merits of Plaintiff's motions to compel, to include, however, a discussion of whether Plaintiff's motions were timely filed.

(Doc. # 204 at 4; italics in the original; emphasis added.)

On August 23, 2013, Judge Hicks granted Defendant Minnesota Life's motion for summary judgment. (Doc. # 207.) On December 4, 2013, Judge Hicks denied Plaintiff's motion for partial summary judgment (Doc # 213) and granted in part and denied in part Wells Fargo's motion for summary judgment (Doc # 215). Plaintiff Downs' motion for reconsideration of the court's order granting summary judgment to Minnesota Life was denied by Judge Hicks, also on December 4, 2013. (Doc. # 214.)

Shortly thereafter on December 10, 2013, Judge Hicks noted various discovery motions had been previously filed but stayed pending resolution of the motions for summary judgment. These discovery motions (Doc. ## 181, 188, 191) were denied by Judge Hicks without prejudice to allow the parties to re-evaluate their respective positions and to decide whether to proceed with similar discovery motions. (Doc. # 218.) The pending motions followed thereafter.

**A. Plaintiff's Motion to Compel (Doc. # 223)**

In response to Judge Hicks' order, Plaintiff Downs re-filed her motion to compel discovery from Minnesota Life. (Doc. # 223.) This motion is essentially a restatement of Plaintiff's prior discovery motion (Doc. # 188). As discussed earlier in this order at pages 3-4, both motions pertain to two subjects: (1) whether Minnesota Life's claim handling Power Point and/or booklet was produced as was ordered (Doc. # 223 at 2; Doc. #188 at 2); and (2) to clarify via a declaration from a Kathryn Schmidt of Minnesota Life whether a Minnesota Life the subject of a Minnesota Life administrative manual pertained to claims procedures (Doc. # 223 at 2; #188 at 2-3). Plaintiff accurately states that this court had previously ordered responses to these two topics by Minnesota Life. (Doc.# 132 at 2; see *supra* at pp. 3-4.) Minnesota Life claims it fully complied with the Plaintiff's Discovery. (Doc. # 226 at 4-5.)

With regard to the present motion to compel (Doc. # 223), Plaintiff states she complied with Local Rule 26-7 (the "meet and confer" precondition to filing a discovery motion) by referencing <u>prior</u> "exchanges," the last being on April 5, 2013, which is nine months prior to the instant motion. (Doc. #223 at 2; Doc. #223-1 at 1-2.) Also attached as Doc. # 223-2 was a copy of an email from Plaintiff's

counsel to Defendant's counsel asking whether Minnesota Life was "interested in producing any of the discovery requested in the most recent motion to compel." Minnesota Life responded by stating that because Judge Hicks granted Minnesota Life summary judgment, "it was not obligated to participate further in discovery," also citing this court's order at Doc. # 205. This was apparently the extent of Plaintiff's counsel's attempts to satisfy the meet and confer obligation.

**B. Defendant's Motion to Strike (Doc # 226)**

Defendant Minnesota Life's response to Plaintiff's motion to compel was to file the subject motion to strike (Doc. # 226). Minnesota Life's primary argument is that because Judge Hicks' order (Doc. # 207) granted Minnesota Life's motion for summary judgment, any further discovery as to Minnesota Life is precluded. Substantively, however, and as noted above, Minnesota Life states it has already complied with both Plaintiff's discovery requests and this court's order. (Doc. # 226 at 4-5.)

More specifically, as to the Power Point/booklet, Minnesota Life states it "produced approximately two hundred pages of training materials, including power point presentations 'booklets' of statutes." (Doc. # 226 at 5.) As to the declaration issue (the second component of the court's order), Minnesota Life produced a declaration from Minnesota life's Group Claims Manager Kathryn Schmidt that verified the Administrative Manual Plaintiff sought from Minnesota Life does not speak to claim handling procedures and that instead the manual is a "generic document that has been provided to financial institution clients at the outset of an insurance relationship." Irrespective of the precise subject matter of the manual, it appears the manual (also referred to as an "Insurance Marketing and Administration Agreement") was produced by Minnesota Life as "MLDMAA 00001-57." (Doc. # 226-2.)

Defendant Minnesota Life disputed that Plaintiff's "one line email to Minnesota Life's counsel" constituted compliance with Local Rule 26-7. (Doc # 226 at 5-6.)

Plaintiff filed an opposition to Defendant's motion to strike. (Doc. # 230.) Downs argued that Plaintiff should still be entitled to secure discovery from Minnesota Live because even if Minnesota Life has been dismissed from this case, the discovery Plaintiff seeks from Minnesota Life pertains to her surviving causes of action against Wells Fargo. Plaintiff also argues Minnesota Life has not complied with the court's discovery order regarding the manual, power point, etc. (*id*.) which, as discussed above,

Minnesota Life disputes.

With the restatement of the factual and historical background of this case, the court will now turn to an analysis of Defendant Minnesota Life's motion to strike (Doc. # 226).

**III. Analysis**

The issue with which this court is confronted appears to be whether discovery disputes which predated summary judgment being entered in favor of the party from whom discovery was sought should preclude the court from entertaining further motions relative to the prior discovery. Interestingly, the prior discovery Plaintiff seeks does not pertain to the dismissed Defendant, Minnesota Life, but rather to further Plaintiff's surviving claims against Minnesota Life's co-defendant, Wells Fargo. Another issue, however, and the one this court should address at the outset, is whether in fact "all of Plaintiff's claims against Minnesota Life have been dismissed" as Minnesota Life asserts. (Doc. # 226 at 1; emphasis added.) Even though Plaintiff did not dispute Minnesota Life's contention all of Plaintiff's claims against it were terminated (Doc. # 230), the court will do so *sua sponte.*

**A. Whether all claims against Minnesota Life have been dismissed.**

As discussed above, District Judge Larry R. Hicks granted Defendant Minnesota Life's Motion for Summary Judgment (Doc. # 207). The Plaintiff's causes of action against Minnesota Life for intentional/negligent infliction of emotional distress, breach of contract, breach of implied covenants of good faith and fair dealing, unfair claims practices, negligence and unjust enrichment, were all decided adversely to Plaintiff (*id*). However, in granting summary judgment on these causes of action in favor of Minnesota Life, Judge Hicks noted in footnote 2 of his decision that Minnesota Life did not address or move for summary judgment on three of Downs' ten causes of action: the Sixth Cause of Action for conspiracy to defraud, Eighth Cause of Action for invasion of privacy or Tenth Cause of Action for quiet title. (*Id*., at 2, n.2.)

Although Judge Hicks did not specifically address whether these three causes of action survived as against Minnesota Life, the record of this matter reflects that Judge Hicks previously concluded that those three claims for relief, as averred by Plaintiff Downs, failed to state a claim upon which relief could be granted as against Wells Fargo. (Doc. # 64.) While the amended order of dismissal of these claims was in reference to a motion to dismiss filed by Defendants Wells Fargo and River City, the

court's rationale for terminating those claims as to Wells Fargo and River City can logically only be interpreted such that these claims would also be insufficient to state a claim as to Defendant Minnesota Life.

More specifically, with regard to Plaintiff's "conspiracy to defraud" claim in the Sixth Cause of Action, Judge Hicks stated:

> Downs fails to allege with specificity how Wells Fargo joined or participated in the conspiracy. Further, Downs fails to allege the underlying fraudulent conduct and misrepresentation with sufficient particularity as required by Rule 9 of the Federal Rules of Civil Procedure. Therefore, the court finds that Downs fails to state claim for conspiracy.

(Doc. # 64 at 6.)

With regard to the "invasion of privacy" claim in the Eighth Cause of Action, the court ruled that:

> In her complaint, Downs has failed to allege that anyone other than her saw the recorded notice of default. Such an allegation does not constitute a public disclosure sufficient to provide a basis for recovery.

(*Id*., at 7.)

And last, with regard to the "quiet title" claim in the Tenth Cause of Action, Judge Hicks observed that under Nevada law, a quiet title action may be brought by someone who claims an adverse interest in property. But because no one is claiming an interest in the property that was adverse to Downs, Plaintiff Downs "has no grounds to quiet title against Defendant and the court shall grant the motion to dismiss as to this issue." (*Id*., at 8.)

Minnesota Life's emergency motion (Doc. # 226) stated that Judge Hicks' ruling "disposed of *all* Downs' claims against Minnesota Life," (*id*., at 2; emphasis in the original.) In view of the reference in footnote 2 of Judge Hicks' order granting summary judgment, because Minnesota Life did not address or move for summary judgment on the aforementioned causes of action, these claims might conceivably be considered to have survived as against Minnesota Life. (At best, of those three causes of action, it would appear only the "conspiracy to defraud" claim would be applicable to Minnesota Life in any event.) However, as stated above, because Judge Hicks' amended order (Doc. # 64) found that none of those claims stated a viable cause of action, it would appear that for all intents and purposes there are

/ / /

/ / /

no claims that presently survive as against Minnesota Life Insurance Company.[5] The court will therefore address Plaintiff's motion to compel (Doc. # 223) and Minnesota Life's motion to strike (Doc. # 226) from the standpoint that none of Plaintiff's causes of actions against Minnesota Life remain viable.

**B. Whether discovery may be obtained from a party against which no viable claims remain.**

Plaintiff's opposition to Minnesota Life's emergency motion (Doc. # 230) did not argue all of the Plaintiff's claims against Minnesota Life have not been dismissed. Nor did her opposition contain any substantive argument whether discovery could be procured after summary judgment has been entered in favor of an adverse party. Downs' opposition only addressed the merits of the discovery dispute, i.e., whether the subject power point presentation and/or administrative manual were produced because she was only seeking discovery or information related to her claims against Wells Fargo. Downs attempted to distinguish Minnesota Life's authorities as follows:

> "Plaintiff is seeking discovery of materials and information that is related to the claims against Wells Fargo. *Id.* Therefore, MN Life's citation to case law where discovery was denied because the information sought was only relevant to dismissed claims is not applicable to this matter. Again, the discovery sought from MN Life is relevant to the claims against Wells Fargo, as Wells Fargo had duties and obligations regarding the claim handling of the optional product at issue."

(Doc. # 230 at 3.)

Minnesota Life cites two cases in favor of the general rule that once summary judgment has been entered in favor of a party, any motion to compel further discovery as to that party is deemed moot. *Emery v. Pierce County*, 435 Fed. App'x. 611 (9th Cir. 2011) and *Brown v. Inter Ocean Ins. Co.*, 438 F.Supp 951 (N.D. Ga. 1977).[6] Plaintiff's argument, on the other hand, is that because her discovery pertained to her claims to a co-defendant against which her case continues, she should be allowed to pursue her motion to compel, even against an ostensibly dismissed party.

---

[5] In hindsight, it probably would have been advisable for Minnesota Life to have at least addressed the viability or survivability of three causes of action not specifically referenced by its motion. The court presumes Minnesota Life did not do so because it was operating under the assumption the court's amended order (Doc. # 64) previously terminated those claims not only against Wells Fargo but by implication against Minnesota Life as well.

[6] In granting Defendants' motions for stay, this court concluded "[i]f Judge Hicks grants Defendants' motions for summary judgment as to either or both parties, as noted above, *obviously* the motion to compel as to that party becomes moot." (Doc. # 204 at 4; emphasis added.) In light of certain case authority discussed *infra*, the court's choice of the word "obviously" may have been overbroad.

The *Emery* and *Brown* cases clearly stand for the proposition asserted by Minnesota Life, i.e., that no discovery may be had against a party once it has been dismissed. However, a case distinguished in the *Emery* decision deserves further examination as it pertains to the pending dispute.

In *Emery*, the Ninth Circuit Panel stated that:

> The district court did not err in denying the motion to compel as moot after ruling on the motion for summary judgment. Unlike *Garrett v. City of San Francisco*, 818 F.2d 1515 (9th Cir. 1987), plaintiffs filed an untimely motion to compel, sought vastly overbroad additional discovery and did not comply with Rule 56(f). Furthermore, plaintiffs did not show, as required, that additional discovery was necessary to defeat the motion for summary judgment. *Id.*, at 1517-19.

435 F. App'x at 613.

In *Garrett v. City and County of San Francisco*, 818 F.2d 1515, 1518 (9th Cir. 1987). the Ninth Circuit noted the trial court's exercise of discretion on discovery will "rarely be disturbed." However, he Ninth Circuit stated the record in *Garrett* reflected *not* the abuse of discretion by the trial court, but rather a failure to exercise its discretion. (*Id.*)

In *Garrett*, the plaintiff had timely served certain discovery requests. Before close of discovery, the plaintiff moved to compel production of certain documents and to extend the discovery cut-off date. Thereafter, the defendants moved for and the court granted defendant summary judgment. The trial court denied as moot plaintiff's discovery motion because of the grant of summary judgment in favor of defendants. 818 F.2d at 1517-18.

The Ninth Circuit concluded the trial court erred by not first addressing and ruling on the merits of plaintiff's discovery motion. Even though the plaintiff in *Garrett* had not requested deferral of resolution of the defendant's motion for summary judgment, the Ninth Circuit stated that under then existing Fed. R. Civ. P. 56(f)[7], a pending and timely motion to compel was sufficient to raise 56(f) considerations. (*Id.*, at 1518-19.) The court determined that the plaintiff's discovery motion by implication invoked 56(f) because "[i]t made clear the information sought, did not seek broad additional discovery, but rather sought only the personnel records of sixteen named firefighters and indicated the purpose for which this information was sought, namely to determine whether similarly situated

---

[7] Now, Fed. R. Civ. P. 56(d).

firefighters were being treated differently on the basis of race." (*Id*., at 1518-1519.) The Ninth Circuit held the motion was timely made under the scheduling order and had been set for hearing before the discovery cut-off date. Although recognizing that a party is not required to specifically file a 56(d) motion, because plaintiff Garrett nonetheless filed his motion to compel before the motion for summary judgment was fully litigated, the Ninth Circuit concluded the trial court should have at least addressed Plaintiff's motion to compel.

But the *Garrett* facts are distinguishable from this dispute. In the present matter, after Minnesota Life filed its motion for summary judgment (Doc. # 155), Plaintiff's thirty page opposition (Doc. # 179) asserted no Rule 54(d) argument that any discovery was required to be able to oppose the pending motion for summary judgment. (*Id*.) In fact, Downs' pending opposition (Doc. # 230) to Minnesota Life's motion to strike still makes no contention she needed the discovery to oppose Minnesota Life's motion for summary judgment. Instead, her argument remains that she needs discovery from Minnesota Life to prosecute her action against Wells Fargo. With respect to that issue, Plaintiff admitted the discovery is irrelevant to Minnesota Life:

> Plaintiff would understand MN Life's motion to strike the motion to compel if the discovery sought was irrelevant and not pertinent to the claims against Wells Fargo. However, such is not the case *** The administration manual is relevant to Wells Fargo's duties and obligations regarding the optional product and the claims that issue in this matter *** Plaintiff is seeking discovery materials that is related to the claims against Wells Fargo.

(Doc. # 230 at 2-3.)

Plaintiff rationalizes that because the discovery "sought from MN Life is relevant to the claims against Wells Fargo," therefore "MN Life's citation to case law where discovery against a dismissed defendant was denied because the information sought was only relevant to dismissed claims is not applicable to this matter." (*Id*., at 3.) Plaintiff cites no authority for her contention that discovery from a terminated defendant may nonetheless be secured if that discovery pertains to claims which remains viable as to a former co-defendant. On the other hand, as the *Emery* and *Brown* decisions reflect, once summary judgment has been granted in a party's behalf, any further discovery as to that party is precluded.

The *Garrett* rationale and exception is not applicable to this case. Although Plaintiff Downs'

underlying motion to compel (Doc. # 188) pertained to discovery served prior to the discovery deadline, the motion to compel itself was not filed until approximately ten weeks after the expiration of that deadline. The allegedly objectionable discovery responses from Minnesota Life about which Plaintiff complained in Doc. # 166 were produced by Minnesota Life in January and February, 2013. (Doc. # 226-2.) Although these responses came at or about the time of the deadline for completion of discovery (February 8, 2013), Plaintiff's underlying motion (Doc. # 188) was not filed until April 25, 2013, some two weeks after briefing on all of the motion for summary judgment was completed.

On the other hand, the *Garrett* court noted the plaintiff's motion to compel was timely filed (and set for a hearing) <u>before</u> the deadline for completion of discovery. 818 F.2d at 1519. The discovery motion was also filed before the motions for summary judgment were filed, as opposed to the present matter where the motion to compel followed the completion of briefing on all of the parties' motions for summary judgment. Thus, unlike *Garrett*, and more akin to *Emery*, Plaintiff's underlying discovery motion (Doc. # 188) was untimely. Absent unusual circumstances, a discovery motion should be filed before the expiration of the discovery deadline. *Gault v. Nabisco Biscuit Co.*, 184 F.R.D. 620, 622 (D. Nev. 1999). While the allegedly objectionable discovery responses were served at or about the time of the discovery deadline, Plaintiff still waited some ten weeks to challenge the sufficiency of Defendant Minnesota Life's responses.

Plaintiff also made no argument she should be allowed to obtain a ruling on the motions to compel to enable her to oppose the Defendants' motions for summary judgment. In fact, this court's order delaying resolution of the discovery motions made this imminently clear:

> The court noted that Plaintiff's motion to compel against Minnesota Life was filed on April 25, 2013, and that Plaintiff's motion against Wells Fargo was filed on April 29, 2013 (Docs. # 188 and # 191). However, the discovery deadline in this case expired on February 8, 2013. (Doc. 82.) Perhaps more importantly, it is noted that all parties, Plaintiff included, filed motions for summary judgment in this case: * * * Briefing on these motions was completed on April 11, 2013. <u>No party, most importantly the Plaintiff, asserted that resolution of the motions should be delayed under Fed. R. Civ. P. 56(d) until after additional discovery indispensable to the case and important to the motions for summary judgment was completed.</u> * * * if Plaintiff thought this discovery was relevant to the issues presented by the motions of the Defendants, Plaintiff could have made an argument to the court which would have delayed consideration of the motions
>
> * * *

> Thus, the court fails to understand how the discovery Plaintiff wants to now compel from Defendants can have any real relevancy to this case if this discovery was so unimportant that Plaintiff did not feel a need for it to be used in opposing the motions for summary judgment.
>
> * * * The court would assume that if the information sought in these motions to compel had any substantive validity, the Plaintiff would have sought the 56(d) extension to supplement her oppositions, but she did not do so.

(Doc. # 204 at p. 2-3; emphasis added)

Thus, the present case is distinguishable from *Garrett*. The court concludes the present case is governed by the *Emery* rationale, i.e., that absent unique circumstances, discovery cannot be obtained form a defendant which has been dismissed from the case. This court does not accept Plaintiff's explanation that she is seeking this discovery from a dismissed Defendant to pursue a claim against a non-dismissed Defendant qualifies as an exception to the general rule.

**C. Analysis of the procedural and substantive issues of Plaintiff's Motion to Compel and Defendant Minnesota Life's Motion to Strike.**

      **(1) Meet and Confer**

The court's rules require a personal consultation and a sincere effort to resolve a discovery dispute. Local Rule 26-7(b). See, also, Fed. R. Civ. P. 26(c)(1) and 37 (a)(1). Sending a one line email to opposing counsel generally addressing the disputed discovery neither qualifies as a personal consultation or a sincere effort to resolve a discovery dispute. *cf. Shuffle Master, Inc. v. Progressive Games, Inc.*, 170 F.R.D. 166, 171 (D. Nev. 1996).

Plaintiff's motion to compel fails to satisfy this precondition to discovery motions.

      **(2) Timeliness**

The deadline for completion of discovery was February 8, 2013. Plaintiff's and Defendants' motions for summary judgment were fully briefed and submitted for decision on April 13, 2013. Plaintiff's underlying motion (Doc. # 188) was not filed until April 29, 2013. It is therefore untimely. *Olivia v. National City Corporation*, No. 2:08-cv-01559-PMP-LRL, 2010 WL 1949600 (5/12/10); *Gault, supra*.

Plaintiff has suggested that because her motion to compel (Doc. # 188) related to an earlier motion to compel (Doc. # 103), her subsequent motions (Doc. ## 188, 223) are timely. Plaintiff is

mistaken. Motion #103 was ruled on by the court long before # 188 was filed. (Doc. # 132 at 2, 4.) If Plaintiff thought Minnesota Life's supplemental discovery productions in response to the court order were inadequate, Plaintiff had an obligation to make those claims contemporaneously with Minnesota Life's production, not ten weeks later.

**(3) Substantive Compliance with Discovery**

Even if the Plaintiff's motion to compel was not otherwise deficient for the procedural reasons discussed above, the court finds that at the least there has been substantial compliance with the Plaintiff's remaining discovery (Doc. # 226 at 5; # 226-2) and the court order pertaining thereto. (Doc. #132.)

## III. Conclusion

The court **GRANTS** the relief sought in Defendant's Minnesota Life's Emergency Motion to Strike Plaintiff's Motion to Compel (Doc. # 226), but declines to strike the document (Doc. # 223) itself.

The court **DENIES** Defendant's Request for Expedited Relief on Order Shortening Time (Doc. # 227) as moot.

The court **DENIES** Plaintiff's Motion to Compel (Doc. # 223).

**IT IS SO ORDERED.**[8]

DATED: January 17, 2014.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

[8] The court declines to award the attorneys fees and costs sought by Minnesota Life in its motion. (Doc. # 226 at 5-6.)