1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

9   LINDA DOWNS,                                )          3:11-cv-00885-LRH-WGC
                                                )
10              Plaintiff,                       )          **ORDER**
                                                )
11       vs.                                     )          re: Motion to Preclude Testimony
                                                )                by Dr. Thomas Bittker
12   RIVER CITY GROUP, LLC, et al.,              )
                                                )          Doc. # 224
13              Defendant(s).                    )
     _____)

14

15          Before the court is the motion of Defendant Wells Fargo Bank, N.A. (Wells Fargo) to prelude

16   the testimony of Plaintiff's "rebuttal" expert, Dr. Thomas Bittker. (Doc. # 224.)[1] Plaintiff Linda Downs

17   (Downs) has opposed the motion (Doc. # 229) and Wells Fargo has replied (Doc. # 234).  The motion

18   has been referred to the undersigned by Senior District Judge Larry R. Hicks.

19   **I.  Background**

20          On August 22, 2013, District Judge Larry R. Hicks granted Defendant Minnesota Life's motion

21   for summary judgment (Doc. # 207). On December 4, 2013, Judge Hicks denied Plaintiff's motion for

22   partial summary judgment (Doc.# 213) and also entered an order granting in part/denying in part

23   Defendant Wells Fargo's motion for summary judgment (Doc. # 215). On December 9, 2013, in view

24   of his orders on the parties' summary judgment motions, Judge Hicks denied, without prejudice, several

25   other pending motions, including Minnesota Life Insurance Company's (Minnesota Life) earlier motion

26   to preclude the testimony of Dr. Bittker as a rebuttal expert witness (Doc. # 181, joined in by Wells

27   Fargo in Doc. # 182). Judge Hicks allowed the parties the opportunity to review the court's various

28

_____

[1] Refers to court's docket number.

1  orders on summary judgment and to "determine how and whether to proceed with similar motions in this
2  litigation." (Doc. # 218.) Defendant Wells Fargo has now re-filed the motion to exclude Dr. Bittker as
3  a rebuttal expert witness in this matter. (Doc. # 224.)[2]

4     There are several issues presented by the Wells Fargo motion. First, whether "rebuttal" reports
5  were contemplated under the court's scheduling order and discovery plans. Second, whether the Bittker
6  report is truly in rebuttal to Defendants' expert (Dr. Piasecki). Third, if Dr. Bittker's report is not
7  legitimate rebuttal, whether the failure to disclose Dr. Bittker as a primary testifying expert was, under
8  Fed. R. Civ. P. 37(c)(1), "substantially justified or is harmless."[3]

9  **II. Discussion**

10     **1. Timeliness of the Disclosure of a Rebuttal Expert**

11     Defendant Wells Fargo contends the scheduling order did not provide for disclosure of rebuttal
12  experts and that Plaintiff's attempts to disclose Dr. Bittker either as a primary expert, or as a rebuttal
13  expert, are untimely. (Doc. # 224 at 5.) Plaintiff disagrees and contends her disclosure of Dr. Bittker was
14  timely. (Doc. # 229 at 2.)

15     The court's initial scheduling order (as proposed by the parties) only addressed the deadlines for
16  disclosure of expert witnesses; it was silent as to rebuttal experts. (Doc. # 40 at 2.) However, two
17  subsequent scheduling orders (Doc. # 70 at 2, # 80 at 2) called for simultaneous exchange of experts and
18  rebuttal experts. The protocol for disclosing experts was changed again by the parties in Doc. # 82,
19  which called for staggered disclosures (Plaintiff's disclosures were due December 10, 2012; Defendants'
20  disclosures were due January 9, 2013; *id.,* at 2.) The scheduling order was again silent about rebuttal
21  experts.

22     As it did previously, the court again finds this omission of the deadline for disclosure of rebuttal

23

24     [2] The prior motion to exclude, Docs. # 181, 182) was made when Minnesota Life was still a party. Minnesota Life
25  has since been dismissed. (Doc. # 207.)

26     [3] The court found, unfortunately, that the parties' references in their respective memoranda regarding the Bittker
report did not actually take the reader to the location in the docket to find the report at issue. (See, e.g., references to Doc.
27  ## 144, 181, and 186 in Docs. ## 224, 229 and 234.) The court, however, has located the Bittker report at Doc. # 146-1; the
Plaintiff's *disclosure* of Dr. Bittker appears at Doc. # 181-1. A follow-up letter of Dr. Bittker, which may or may not
constitute part of Dr. Bittker's proposed expert opinion, is found at Doc. # 171-1. The report which the Bittker opinion
28  purportedly rebuts, Minnesota Life/Wells Fargo expert Melissa Piasecki, M.D., may be found at Doc. # 181-2.

1   experts to have been an inadvertent omission. Both the Federal Rules of Civil Procedure and the Local

2   Rules [26(a)(2)(D)(ii) and 26-1, respectively] provide for disclosure deadlines of rebuttal experts 30 days

3   after the initial disclosures. As the court indicated at a status/discovery conference on February 19, 2013,

> \* \* \* originally there were to be simultaneous expert report disclosure dates. At the request of the parties, the dates were then staggered to allow plaintiff's disclosure first. However, the date for rebuttal expert(s) was inadvertently never set. The court indicates that it had always contemplated that there might be rebuttal expert reports. In view of this observation, the court is not inclined to agree with the defendant's argument that plaintiff's designation of Thomas Bittker, M.D., was untimely.

9   (Doc. # 151 at 1; emphasis added.)

10   The court reaffirms this conclusion. Although the last iteration of the scheduling order may have

11   omitted reference to a deadline for disclosure of rebuttal experts, clearly such an event was anticipated

12   under the history of this case and as provided for in the applicable rules.

13   To the extent Dr. Bittker is a legitimate rebuttal expert, his disclosure is deemed to be timely.

### 2.   Substantive Considerations of Rebuttal Expert Testimony

15   The court will now turn to the substantive issue of whether Dr. Bittker's report constitutes

16   legitimate rebuttal testimony.

### (a)   Overview of the Law Pertaining to Rebuttal Experts

18   Rebuttal expert testimony is restricted to subjects which are "intended solely to contradict or

19   rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(c)(ii);

20   (emphasis added.). Magistrate Judge Lawrence Leavitt discussed the subject of what constitutes

21   legitimate rebuttal expert testimony in a decision cited by both parties in this matter, *R & O Const. Co. v.*

22   *Rox Pro Intn'l Group, Ltd.*, No. 2:09-cv-01749-LRH-LRL, 2011 WL 2923703 (D. Nev., July 18, 2011):

> Rebuttal expert reports "necessitate 'a showing of facts supporting the opposite conclusion' of those at which the opposing party's expert arrived in their responsive reports." *Bone Care Int'l, LLC v. Pentech Pharmaceuticals, Inc.,* 2010 WL 389444 (N.D. Ill. Sep. 30, 2010) (quoting *ABB Air Preheater, Inc. v. Regenerative Environmental Equip., Inc.,* 167 F.R.D. 668, 669 (D. N.J. 1996). Rebuttal expert reports are proper if they contradict or rebut the subject matter of the affirmative expert report. *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Haw. 2008). They are not, however, the proper place for presenting new arguments. *1-800 Contacts, Inc. v. Lens. com, Inc.*, 755

1    F.Supp.2d 1151, 1167 (D. Utah 2010); *see LaFlamme v. Safeway, Inc.*,
2    2010 WL 3522378 (D. Nev. Sep. 2, 2010); *cf. Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 749, 759 (8th Cir. 2006) ("The function of rebuttal
3    testimony is to explain, repel, counteract or disprove evidence of the adverse party.") (citation omitted). "If the purpose of expert testimony is
4    to 'contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything
5    analogous to one' "*Amos v. Makita, U.S.A.*, 2011 WL 43092 at * 2 (D. Nev. Jan. 6, 2011) (quoting *In re Apex Oil Co*., 958 F.3d 243, 245 (8th
6    Cir. 1992)); *see also Morgan v. Commercial Union Assur. Cos.*, 606 F.2d 554, 556 (5th Cir. 1979); *LaFlamme*, 2010 WL 3522378 at * 3. Rather,
7    rebuttal expert testimony "is limited to 'new unforeseen facts brought out in the other side's case.' "*In re President's Casinos, Inc.*, 2007 WL
8    7232932 at * 2 (E.D. Mo. May 16, 2007) (quoting *Cates v. Sears, Roebuck & Co.*, 928 F.2d 679, 685 (5th Cir. 1991)).

9    Expert testimony which is not truly rebuttal in nature shall not be allowed at trial, unless the

10   failure to disclose information required by Rule 26(as) was "harmless" or "substantially justified."

11   Fed. R. Civ, P. 37(c)(1). The sanction of preclusion is "automatic and mandatory unless the sanctioned

12   party can show its violation...was either justified or harmless." ( *R & O Const. Co.,* 2011 WL 2923703

13   at * 2, citing *Salgado v. General Motors Corp.,* 150 F.2d 735, 742 (7th Cir. 1998).)

14          **(b)  Overview of the Parties' Arguments**

15          Wells Fargo asserts that "Dr. Bittker does not resemble a true rebuttal expert" and is instead "a

16   late-disclosed affirmative expert masquerading as a rebuttal expert."   (Doc. # 224 at 6.) Defendant

17   contends Plaintiff has asserted a claim of emotional distress from the outset of this case and was aware

18   "long, long before the expert disclosure deadline...that she would need to establish medical causation."

19   Defendant seeks the court to preclude Dr. Bittker "from testifying as a rebuttal expert because his sole

20   purpose is to establish medical causation, a central element of Downs' case." (*Id*., at 7; citation omitted.)

21          Defendant further argues that unlike the rebuttal expert testimony permitted in *LaFlamme v.*

22   *Safeway, Inc.*, No. 3:09-cv-00514-ECR-VPC, 1010 WL 352237 (D. Nev. Sep. 2, 2010), Dr. Bittker's

23   report

24          does not question or criticize Dr. Piasecki's assumptions or methodology.
            In fact, his report only mentions Dr. Piasecki's report in passing. [fn. 3].
25          Instead, Defendant argues [the Bittker report] impermissibly speaks to
            "expected and anticipated" elements of Downs' case-in-chief–medical
26          causation. Dr. Bittker is not a rebuttal expert and should be precluded
            from masquerading as one at trial.
27
     (Doc. 224 at 7, 8.)
28

                                          4

1    Footnote 3 referred to in the preceding quotation from Defendant's memorandum reads as

2    follows:

3            Dr. Bittker's response to Dr. Piasecki's report is limited to the following
             blurb: "Regarding Dr. Piasecki's opinion, although I concur that
4            Mrs. Downs presents with a long history of medical and psychiatric
             problems, I cannot agree that the stress of foreclosure was an insignificant
5            contributor to her current distress."

6    (Doc. # 224 at 8, fn. 2; also id., at p. 2.)

7    Defendant therefore concludes the proposed testimony of Dr. Bittker is not truly rebuttal in nature

8    and if Plaintiff wanted to utilize the opinions of a psychiatrist, Dr. Bittker should have been disclosed

9    as "an affirmative expert." (Defendant also seeks to preclude Dr. Bittker from testifying "as affirmative

10   expert" in Plaintiff case-in-chief because he was not timely disclosed).

11   Plaintiff, on the other hand,  contends that "Dr. Bittker will be used to explain, repel, contradict,

12   impeach or disprove the opinions offered by Dr. Piasecki." (Doc. # 229 at 7.) Plaintiff further argues

13   "Dr. Bittker addresses the new matter brought out by Dr. Piasecki, speaks to the same subject matter

14   addressed by Dr. Piasecki and directly rebuts her opinions without introducing any novel arguments.

15   Plaintiff states her rationale and purpose of retaining Dr. Bittker as follows:

16           Dr. Bittker was retained by Watson Rounds after Dr. Piasecki was
             disclosed. * * * Dr. Bittker was specifically engaged, as a psychiatrist, to
17           rebut the opinions of Dr. Piasecki, a psychiatrist. Dr. Piasecki's disclosure
             constitutes a new matter since no psychiatrist and no psychiatrist's
18           opinions had been disclosed in this matter until MN Life disclosed
             Dr. Piasecki. Since neither Dr. Harris nor Ms. Paschal is a psychiatrist,
19           Plaintiff chose to rebut Defendants' psychiatrist with another psychiatrist.

20   (Doc. # 229 at 5.)

21   Therefore, Plaintiff argues Dr. Bittker is a proper rebuttal expert and Wells Fargo's motion

22   should be denied." (Id., at 8.)[4]

23

24   _____

     [4] A problem which surfaces with respect to Plaintiff's argument is which report of Dr. Bittker constitutes his rebuttal

25   opinion. Plaintiff does not specifically refer in the record to the actual disclosure and corresponding report on which Plaintiff
     relies. Plaintiff states she "timely disclosed the identity of Dr. Bittker and his reports" (plural). (Doc. # 229 at 4.) As noted
     above, there are two Bittker letters or reports: one was presumably the subject of Defendants' initial motion to strike

26   following Plaintiff's disclosure of Dr. Bittker as a rebuttal expert (Doc. # 144, referring to Plaintiff's 2/7/13 disclosure of
     Dr. Bittker; the Bittker report may be found at Doc # 146-1, the undated report of Dr. Bittker bearing a fax date of "Feb-07-

27   2013") The other Bittker letter referred to–and quoted from extensively in Plaintiff's opposition (Doc # 229)–is a "Record
     Review" of Dr. Bittker fax dated "Mar-25-2013." (Doc. # 171-1.) The court can find no disclosure or supplemental disclosure

28   made by Plaintiff concerning the second Bittker letter.

1    Defendant in reply again argues Dr. Bittker's report does not qualify as rebuttal because it

2    addresses "expected and anticipated" elements of the Plaintiff's case-in-chief.   (Doc. # 234 at 2.)

3    Defendant asserts Dr. Bittker's "sole purpose is to establish medical causation, a central element of

4    Downs's case." (*Id*.)  Wells Fargo asserts that by addressing Dr. Piasecki's report "only in passing,"

5    Dr. Bittker does not "question or criticize Dr. Piasecki's assumptions of methodology." (*Id*., at 3.)

6    As mentioned above in footnote 4, Defendant notes that Plaintiff's opposition (Doc. # 229) also

7    refers primarily to the second undated letter filed as Doc. # 171-1. It is a letter faxed "Mar-24-2013"

8    from Dr. Bittker addressed to Plaintiff's counsel, entitled "Record Review." Apparently after Plaintiff's

9    counsel provided Dr. Bittker additional records pertaining to Mrs. Downs, Dr. Bittker prepared another

10   report. Although entitled "Record Review," Dr. Bittker also states the report is "to further amplify my

11   arguments in rebuttal of the Defendant's expert, Melissa Piasecki, M.D."

12   In its reply memorandum Defendant states it "first saw this letter six weeks after discovery

13   closed, and Downs never disclosed it in accordance with Fed. R. Civ. P. 26(a)(2)(B). Again, as discussed

14   in footnote 4 above, as best as this court can ascertain, Doc. # 171-1 was <u>not</u> produced as a supplemental

15   expert disclosure. Instead, the "Mar-24-2013" Bittker letter is a component of counsel's declaration in

16   opposition to Defendant Wells Fargo's motion for summary judgment (Doc. # 164), which referenced

17   as Exhibit 30 (Doc. # 171-1) the Bittker "Records Review." Defendant points out that Plaintiff, in

18   arguing against the exclusion of Dr. Bittker as a rebuttal expert, quotes <u>not</u> from Plaintiff's rebuttal

19   expert disclosure (Doc. # 146-3) but from the Mar-24-2013 "Record Review" report prepared by

20   Dr. Bittker (Doc. # 229 at 7-8).

21   Thus, the court is faced with the task of attempting to determine whether the Mar-25-2013

22   Bittker letter is even a part of the expert disclosure, an issue not directly addressed by Plaintiff's counsel.

23   Because of the absence of any supplemental expert disclosure of the Mar-20-2013 letter (at least one of

24   which the court is aware), the court restricts its evaluation of the Bittker rebuttal opinion to the undated

25   (but faxed) Feb-07-2013 letter of Dr. Bittker (Doc. # 146-1).[5]

26

27

28   _____

[5] The court would note, however, that even if the Mar-20-2013 Bittker letter were timely or properly disclosed, such would not alter the court's ultimate opinions and conclusions.

1          **(c)   Analysis of the Rebuttal Expert Issue**

2          Under the standard that the "function of rebuttal testimony is to explain, repel, counteract or

3   disprove evidence of the adverse party" (*Marmo*, 457 F.3d at 759) and is "limited to 'new, unforeseen

4   facts brought out in the other side's case'" (*Cates,* 928 F.2d at 685), it is difficult for the court to view

5   Dr. Bittker as a legitimate rebuttal expert.

6          As was found in *R & O Const. Co.*, while the expert and rebuttal expert reports addressed "the

7   same general subject matter of the case," the proposed rebuttal report did not "directly address the

8   findings, i.e., 'the same subject matter' of [the] primary expert's report." *R & O Const. Co.*, 2011 WL

9   2923703 at *2. Rebuttal experts are not allowed to put forth their own theories; instead, "they must

10  restrict their testimony to attacking the theories offered by the adversary's experts." (*Id*.)

11         Application of these standards to the Bittker disclosure leads the court to the inescapable

12  conclusion Dr. Bittker's report(s) cannot be considered truly rebuttal in nature or "anything analogous

13  to a rebuttal expert." *Makita*, 2011 WL 43092 at * 2. Judge Johnston in *Makita* observed that

14  "[c]ausation of the fire [was] the central issue of this entire litigation." (*Id*.) Similarly, in the present

15  matter, "central" to Plaintiff's case is that Downs has asserted that Defendants' conduct caused her

16  emotional distress. (*see, e.g.*, Complaint, Doc. #1, p. 14, ¶ 67.) Establishing the presence, extent, and

17  causation of emotional distress is an issue central to this case, just as the cause of the fire was in *Makita*.

18         Plaintiff contends that Dr. Bittker is a psychiatrist and may have been "specifically engaged, as

19  a psychiatrist to rebut the opinions of Dr. Piasecki, a psychiatrist." (Doc. #229 at 5.) However, the

20  proffered Feb-07-2013 rebuttal opinion of Dr. Bittker only addresses Dr. Piasecki's analysis "in

21  passing." While the report states its "intent" is to "access (sic) the arguments of defendants' expert,

22  Melissa Piasecki, M.D." (Doc. # 146-1 at 1; presumably Dr. Bittker meant to say "assess"), Dr. Bittker

23  only discusses the report of Dr. Piasecki in one paragraph at page 7, and that reference is a quotation

24  from her report. Dr. Bittker attacks no theory offered by his adversary.

25         Although the court believes the rebuttal expert report is limited to the Feb-07-2013 Bittker letter,

26  even the subsequent letter is of no assistance to Plaintiff. The second Bittker report, i.e., the "Record

27  Review" (Mar-25-2013), states its purpose is to "amplify my arguments in rebuttal of the defendant's

28  expert, Melissa Piasecki, M.D." (Doc. # 171-1 at 2.) But a review of this "Record Review" contradicts

1    that assertion. The report initially reviews and discusses the records of Richard Harris, M.D., one of

2    Plaintiff's medical providers, which records, according to Dr. Bittker's report, were generated in the

3    March 2011-August 2012 time frame, well before any of the expert reports were prepared. Clearly, these

4    particular records are <u>not</u> "new, unforeseen facts brought out by the other side's case." *R & O Const. Co.*,

5    2011 WL 2923703 at * 2.

6         Plaintiff's argument, as discussed above, is that she retained Dr. Bittker, a psychiatrist, because

7    Defendants's expert, Dr. Piasecki is a psychiatrist. However, Plaintiff should have anticipated prior to

8    making her initial disclosures that Defendant may choose to attack her emotional distress claim via

9    medical (psychiatric) testimony. Nothing prevented Plaintiff from retaining a psychiatric expert at the

10   outset. That Defendant chose to utilize a psychiatrist for purported rebuttal purposes does not necessarily

11   allow Plaintiff the right to offer wide ranging expert opinions of her newly retained expert in the guise

12   of rebuttal expert testimony. To adopt a meaning as broad as Plaintiff offers in this matter "would all but

13   negate the distinction between an initial 'affirmative expert' and a 'rebuttal expert.'" *R & O Const. Co.*,

14   2011 WL 2923703, citing *Vu v. McNeill-PPC, Inc*., No. CV-09-1656 ODW (RZx) 2010 WL 2179882

15   (May 7, 2010) at * 3.

16        The other component of Dr. Bittker's report is a summary or overview of certain portions of

17   Dr. Piasecki's <u>deposition testimony</u> (pp. 3-4). Dr. Bittker provides his "Comment" about her testimony.

18   His comment, however, is more of an advocacy of Plaintiff's contention Defendant's conduct caused

19   her emotional distress than it is a contradiction of Dr. Piasecki's <u>report</u>.[6] The court is of the opinion the

20   second Bittker letter cannot be considered a legitimate expert's rebuttal report.

21        The court concludes that the report of Dr. Bittker of Feb-07-2013, which the court presumes is

22   the rebuttal expert report Plaintiff seeks to proffer, is not a legitimate or authorized rebuttal report.

23        **3.  Evaluation of the Factors Whether a Violation of a Discovery Deadline was Justified**

24   **or Harmless**

25        Although the court has determined the Feb-07-2013 Bitter report does not qualify as a rebuttal

26

27        [6] The parties do not discuss to what extent a rebuttal expert report may be utilized to evaluate the deposition
     testimony of an opposing expert. The court will not delve into that question at this time, but would assume such a critique
28   is beyond the contemplation of rebuttal expert disclosures under Rule 26(a)(2)(C)(ii).

expert report, the court must still determine whether Dr. Bittker's report might be admissible in Plaintiff's case-in-chief. *Makita*, 2011 WL 43092 at * 2. That evaluation requires an analysis, under Fed. R. Civ. P 37 (c)(1), whether the violation of a discovery deadline was either substantially justified or harmless.

In that regard, *Makita* identified four factors or criteria which a district court should utilize in determining whether a violation of a discovery deadline is justified or harmless:

(a)   prejudice or surprise to the party against whom the evidence is offered;

(b)   the ability of that party to cure the prejudice;

(e)   the likelihood of disruption of the trial; and

(d)   bad faith or willfulness involved in not timely disclosing the evidence.

(*Makita*, 2011 WL 43092 at * 2; other citations omitted.)

The parties, not surprisingly, interpret the application of these standards to this case differently. Plaintiff argues that there is no surprise or harm to Wells Fargo because his (Bittker's) role has been a known factor in this case for months. Plaintiff refers to this court's order allowing the Defendants the opportunity (almost a year ago) to depose Dr. Bittker. (Doc. # 229 at 8, citing Doc. # 151.) Plaintiff states she is still amenable to Defendant deposing Dr. Bittker.[7] Plaintiff notes no trial date is "looming" and suggests that the "court's docket will not be overly taxed by the timely disclosure of Dr. Bittker." (Doc. # 229 at 10.)

Defendant suggests a different conclusion should be reached regarding justification or harm. Applying a five factor test concerning Rule 37(c)(1) sanctions enunciated by the Ninth Circuit in *Wendt v. Host Intern, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997), Defendant first argues that because discovery would have to be reopened in a case which has been pending for over two years, the case would be further delayed.  Defendant does not address, however, that the case is still not yet set for trial or that Wells Fargo apparently still has to complete the deposition of Plaintiff's banking expert (Plaintiff's memorandum, Doc. # 229 at 8).

Wells Fargo argues it would be prejudiced if Dr. Bittker is allowed to testify as it (Wells Fargo)

---

[7] Former Defendant Minnesota Life scheduled but subsequently cancelled the Bittker deposition (Doc. # 229 at 8.)

would not have a chance to "rebut Dr. Bittker" and that it would have to re-depose Dr. Bittker if he is allowed to testify. As discussed later in this decision, the court believes any such prejudice could be alleviated.

Wells Fargo cites the public policy of requiring parties to adhere to the rules of civil procedure and the court's scheduling orders. The court agrees. But the analysis does not end there. While the court determined Dr. Bittker was timely disclosed as a "rebuttal" expert witness, he nonetheless does not qualify in that capacity. Instead, due to the nature of his opinions, he should have been disclosed under the "affirmative expert" deadline (December 10, 2012) imposed under the applicable scheduling order. (Doc. # 82.) He was not.

As a consequence, Defendant advocates that "preclusion is the only proper sanction." (Doc. # 234 at 6.) Defendant distinguishes the *Makita* decision where the court rejected the sanction of exclusion because the risk of prejudice was "minimal and easily remedied." (*Id*.) Defendant contends that if Dr. Bittker is allowed to testify, and even if Wells Fargo were allowed to depose Dr. Bittker, the case would be prolonged further increasing litigation costs. (*Id.* at 7.)

This case admittedly might be somewhat prolonged if Dr. Bittker were allowed to appear as an expert and, if as a consequence, Wells Fargo had to depose him to prepare for trial. But in the overall scheme of things, where multiple depositions have been taken and numerous discovery disputes have arisen (of which this court is all too aware), the disposition of this case would not be unreasonably prolonged nor would the costs be increased inordinately if the court were to allow Dr. Bittker to testify, albeit subject to certain conditions. Additionally, other sanctions are available to ameliorate any prejudice to Defendants.

As discussed above, the district court has wide latitude in resolving discovery disputes involving experts under Rule 37(c)(1). And, as noted in the *Makita* decision, "[e]xcluding expert testimony is not proper when there are other, less severe sanctions available. *Galantine v. Holland America Line-Westours, Inc.*, 333 F.Supp.2d 991, 993-994 (W. D. Wash. 2004)." *Makita* also concluded that "where the harm can be easily remedied, exclusion is not the proper sanction." *Makita*, 2011 WL 43092 at * 4, citing *Frontline Med. Assocs. v. Coventry Health Care*, 263 F.R.D. 567, 570 (C.D. Cal. 2009).

In the case before the court, although the court does not approve of Plaintiff's dilatory tactics and

10

failure to comply with the Rules, it does not appear that exclusion of Dr. Bittker is the appropriate remedy. There is no particular public interest presented by this case. Because no trial date has been scheduled, permitting Dr. Bittker to testify will not unduly disrupt the court's docket. The completion of any discovery contemplated by this order will not extensively delay trial.

While the court declines to impose the Draconian sanction of exclusion, in the exercise of the court's broad discretionary powers, the court nevertheless will condition Plaintiff's ability to call Dr. Bittker as a witness subject to the following restrictions:

1) Plaintiff's expert Dr. Bittker may not be utilized in rebuttal; instead, Plaintiff may utilize Dr. Bittker as an expert witness but only in her case-in-chief;

2) Because Dr. Bittker conceivably gained a tactical advantage by having access to Dr. Piasecki's report before he prepared his opinions, the jury shall be informed that Dr. Bittker's Feb-07-2013 report was prepared after and with the benefit of first having reviewed Dr. Piasecki's report;

3) Only Dr. Bittker's Feb-07-2013 letter (Doc. # 146-1) shall be utilized as his report.

4) Wells Fargo, if it chooses to do so, may depose Dr. Bittker;

5) Because the operative scheduling order (Doc. 82) contemplated staggered expert reports, Wells Fargo's expert, Dr. Piasecki, may prepare an amended or supplemental report taking Dr. Bittker's Feb-07-2013 report into account.

6) If Plaintiff has not previously noticed the deposition of Dr. Piasecki, Plaintiff may not now depose Dr. Piasecki.

Defendant's motion to preclude testimony by Dr. Thomas Bittker (Doc. # 224) is **DENIED,** consistent with this order.

**IT IS SO ORDERED.**

**DATED:  February 28, 2014**


_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE