# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| LINDA DOWNS, | 3:11-cv-00885-LRH-WGC |
| Plaintiff, | **ORDER** |
| v. | Re: Remaining Downs-Minnesota Life Discovery Dispute |
| RIVER CITY GROUP, LLC, et. al., | |
| Defendants. | |

The court issues this Order with respect to the remaining discovery dispute between Plaintiff Linda Downs (Downs) and defendant Minnesota Life Insurance Company (Minnesota Life). The court will address the remaining discovery dispute between Downs and Wells Fargo Bank, N.A. (Wells Fargo) in a separate order.

## I. BACKGROUND

The facts and procedural history of this case leading up to the issuance of this Order are set forth in Judge Hicks' September 17, 2014 order (Doc. # 257)[1], and the undersigned's order on remand (Doc. # 258).

The discovery dispute that is the subject of this Order involves Downs' contention that Minnesota Life should be required to produce the following: (1) a Minnesota Life PowerPoint on claims handling and "typed booklet" that deponent Eric Walton testified about with respect to training he received from Minnesota Life in 2012; and (2) an "Administrative Manual" pertaining to the Minnesota Life-Wells Fargo life insurance plan referenced in the deposition of Kathy Schmidt. (*Id.*)

Pursuant to the September 24, 2014 order, the parties filed a joint statement addressing this dispute. (Doc. # 264.) The court issues the instant Order in response to their submission.

---

[1] Refers to court's docket number.

## II. POWERPOINT PRESENTATION AND "TYPED BOOKLET" REFERENCED IN THE WALTON DEPOSITION

**A. Background**

At his deposition, Eric Walton was asked whether he had attended any continuing education seminars in his field (as a claims examiner), and testified that he had taken a refresher course on California law and in connection with that course he was provided a PowerPoint presentation and "typed booklet." (Doc. # 264 at 3-4.) When he was asked if he still had copies of those materials, he testified: "they're filed," and clarified that he meant: "they're filed at my desk at work." (*Id.* at 4.)

**B. Minnesota Life's Position**

According to Minnesota Life, on January 3, 2013, it produced 2009 training materials, which were the last training materials utilized and distributed to claim examiners before the August 2010 claim decision at issue in this case. (Doc. # 264 at 2.) These 2009 training materials were bates stamped as MLDRFP000025-65. (*Id.,* Doc. # 264-1 at 7-47.)

Downs then moved to compel production of the materials Walton received as part of the 2012 training. The court ordered that the PowerPoint presentation and "typed booklet," if they exist, be produced. (Doc. # 132 at 4.) Minnesota Life states that one week later, it produced a copy of the 2012 PowerPoint presentation referenced in Walton's deposition, identified as MLDRFP000246-261. (Doc. # 264 at 2; Doc. # 264-2 at 186-201.) In addition, it produced a copy of the California regulations and statutes that were provided to Walton during the 2012 training session, which he referred to in his deposition as the "typed booklet," identified as MLDRFP214-245. (Doc. # 264 at 3; Doc. # 264-2 at 154-185.) Minnesota Life also voluntarily produced training materials provided to its claim examiners in 2008, 2010, and 2011, identified as MLDRFP000066-213. (Doc. # 264 at 3; Doc. # 264-2 at 6-153.) As such, it maintains that it produced all training materials from 2008 to 2012 to Downs. (Doc. # 264 at 3.)

Three months later, Downs wrote to Minnesota Life and again asked for production of the training materials referenced by Walton in his deposition. (Doc. # 264 at 3; Doc. # 264-3 at 2.) Minnesota Life asked Downs to explain why the prior production was insufficient. (Doc. #

264 at 3; Doc. # 264-3 at 4.) Downs never responded, and filed another motion to compel. (Doc. # 264 at 3; Doc. # 188.)

Minnesota Life again asked Downs to clarify why its prior production was insufficient. (Doc. # 264 at 3-4; Doc. # 264-3 at 7.) Downs did not respond to this e-mail either. (Doc. # 264 at 4.) Downs filed another motion to compel. (Doc. # 223.) This motion was denied by the court, and Downs filed an objection with Judge Hicks. (Docs. # 232, # 233, # 237.) Judge Hicks then remanded the matter to the undersigned Magistrate Judge to determine whether Minnesota Life had in fact produced the materials requested. (Doc. # 257.) Minnesota Life maintains that it has produced all training materials for the period of 2008 through 2012, including those referenced by Walton in his deposition. (*Id.*)

**C. Downs' Position**

Downs claims that Minnesota Life has never produced the specific items referenced by Walton in his deposition. (Doc. # 264 at 7.) Downs acknowledges that Minnesota Life has produced training materials as well as copies of statutes and regulations, but has not affirmatively stated that these materials were those taken from Walton's desk. (*Id.*) In addition, Downs states that Walton never indicated that the "typed booklet" was a booklet of statutes or regulations. (*Id.*) Nor did he indicate that the documents identified as MLDRFP000246-261 constitute the PowerPoint he referenced in his deposition, or that MLDRFP214-245 are in fact the California regulations and statutes provided to Walton that constitute the "typed booklet" to which he referred in his deposition. (*Id.*) Downs demands that the specific PowerPoint presentation and "typed booklet" Walton identified as being filed away in his desk be produced. (*Id.*)

**D. Discussion**

It is disappointing that this issue could not be resolved without the court's further intervention as it appears the remaining dispute is merely whether the 2012 materials produced by Minnesota Life, including the PowerPoint presentation identified as MLDRFP000246-261, and regulation and statutory materials identified as MLDRFP214-245, are in fact that PowerPoint presentation and "typed booklet" referred to by Walton in his deposition.

It is the court's impression that these materials produced by Minnesota Life are in fact those referenced by Walton at his deposition. (*See, i.e.,* Doc. # 264-3 at 7, April 30, 2013 email from Ann Andres to Adam McMillen, stating in pertinent part regarding the PowerPoint presentation and "typed booklet": "I advised you on January 16 that Mr. Walton only kept the most recent training materials at his desk. After your motion to compel, we produced all of the training materials on January 25. There is nothing else to produce, and nothing in Mr. Walton's deposition to correct.")

Nevertheless, the court will try to bring about a resolution of this issue. Minnesota Life is ordered to provide Downs with a declaration or affidavit by Walton indicating whether or not the PowerPoint presentation produced by Minnesota Life, identified as MLDRFP000246-261, is the PowerPoint presentation he was referring to in his deposition. In addition, the declaration or affidavit shall address whether or not the California regulations and statutes produced by Minnesota Life, identified as MLDRFP214-245, are in fact the materials he identified as the "typed booklet" in his deposition.

This declaration or affidavit is to be provided to Downs **WITHIN FOURTEEN DAYS OF THE DATE OF THIS ORDER**. If Downs does not deem the declaration or affidavit to be satisfactory, she is permitted to file a notice **WITHIN TEN DAYS OF HER RECEIPT OF THE DECLARATION OR AFFIDAVIT**, specifying how the declaration or affidavit is insufficient. However, any such filing **shall** be preceded by a meaningful meet and confer session between counsel to try to resolve any remaining dispute. If, on the other hand, Downs finds the declaration or affidavit to be satisfactory, she shall also file a notice with the court to that effect, also **WITHIN TEN DAYS OF HER RECEIPT OF THE DECLARATION OR AFFIDAVIT**. The court will then issue a final order resolving this issue.

### III. "ADMINISTRATIVE MANUAL" IDENTIFIED BY KATHY SCHMIDT

**A. Background**

With respect to the "Administrative Manual", Downs had asked for a Rule 30(b)(6) designee to discuss the Marketing and Administration Agreement (the "M&A Agreement") between Minnesota Life and Wells Fargo. Prior to the deposition, the parties disagreed about the

scope of questioning as to this document, and the court ordered that the scope of questioning related to the M&A Agreement was limited to Minnesota Life's claim handling practices and procedures. As Minnesota Life points out, this clarification was the result of a telephone conference between the court and the parties and is not reflected in the minutes or an order of the court. Minnesota Life produced the entire M&A Agreement to Downs before the deposition. (Doc. # 264-3 at 12-69, identified as MLDMAA000001-57).

The deponent at the Rule 30(b)(6) deposition was Kathy Schmidt, and Downs' counsel asked her a question regarding paragraph 4.2 of the M&A Agreement, which relates to premium collection, and references an "Administration Manual,"[2] a document which is separate and apart from the M&A Agreement. (*See* Doc. # 264-3 at 71 (Schmidt Depo. at 230:17-24).) Minnesota Life objected to the question as being outside the scope of the deposition notice. (*Id.*) Downs subsequently moved to compel production of the "Administration Manual."

Minnesota Life argued that the "Administration Manual" is "generic" and "not specific to the relationship between Minnesota Life and Wells Fargo," and was not used for claims handling. (Doc. # 264 at 5:3-6.) At the hearing on Downs' motion, the court ordered that Minnesota Life provide a declaration from Ms. Schmidt stating, in some fashion, that the "Administrative Manual" does not speak to claims handling procedures. (Doc. # 132 at 4.)

Minnesota Life did produce an affidavit from Ms. Schmidt (Doc. # 264-3 at 76-77), where she stated that the "Administration Manual" referred to in paragraph 4.2 of the M&A is a "generic document that has been provided to financial institution clients at the outset of an insurance relationship," "is not specific to the contractual relationship between Minnesota Life and Wells Fargo" and "does not speak to claim handling procedures." (*Id.* ¶¶ 2-3.) Nevertheless, she did note that the "Administration Manual" contains "one section relating to reporting of death claims." (*Id.* ¶ 4.) Minnesota Life produced the page of the "Administration Manual" related to the reporting of death claims," which was attached as Exhibit 1 to the affidavit, and identified as

---

[2] According to Minnesota Life, the actual title of the document is "Administrative Guide;" however, it has been referred to in the briefing on this subject as a manual. (Doc. # 264 a n. 3.) The document is referred to in the M&A Agreement as an "Administration Manual." (Doc. # 264-3 at 15.) Regardless of the official title, for purposes of consistency, this Order will continue to refer to the document as the "Administrative Manual."

MLDAG000001. (*Id.*, Doc. # 264-3 at 78.) That page contains a paragraph titled, "How To Report Death." (*Id.*) It states, in pertinent part: "If an insured borrower dies, please notify us as soon as possible, so we may begin processing the claim. The Notice of Death form F11933 should be submitted along with a certified death certificate..." (*Id.*)

Downs subsequently demanded that Minnesota Life produce the entire "Administration Manual." (Doc. # 264-3 at 2.) Minnesota Life asked Downs why the Schmidt affidavit was insufficient. (Doc. # 264-3 at 4.) Unfortunately, Downs chose not to respond, but filed another motion to compel. (Doc. # 188.) Minnesota Life again asked Downs to clarify how its prior production was insufficient. (Doc. # 264 at 7.) Downs did not respond, and instead proceeded with her motion to compel without undertaking the obligatory meet and confer procedures to attempt to resolve the discovery dispute.

Again, the court denied Downs' motion to compel (Docs. # 232, # 233), and Downs filed an objection (Doc. # 237). Judge Hicks remanded the matter to the undersigned to determine whether Minnesota Life had in fact complied with the court's prior orders on this topic. (Doc. # 257.)

**B. Minnesota Life's Position**

Minnesota Life contends that a third party's reporting of a claim to Minnesota Life does not speak to Minnesota Life's practice or procedures in handling claims. (Doc. # 264 at 5-6.) Minnesota Life describes the difference between claim reporting and claim handling as follows: claim reporting relates to notice while claim handling relates to processing and deciding. (Doc. # 264 at 6 n. 5.) A third party, usually the claimant, reports a claim to her insurance carrier in order to initiate a claim for benefits, and once it is reported, the carrier investigates, evaluates and decides or "handles" the claim. (*Id.*)

According to Minnesota Life, the "Administration Manual" is a "generic document that provides general guidance to banking institutions that offer Minnesota Life insurance products to their borrowers." (Doc. # 264 at 6:18-20.) Minnesota Life maintains that it has fulfilled its obligation relative to the "Administration Manual" by producing the Schmidt declaration, which states that the "Administration Manual" does not speak to claim handling procedures. (Doc. #

264 at 6.) If necessary, however, it has agreed to provide the entire "Administration Manual" to the court for in camera review. (*Id.* at 6-7.)

### C. Downs' Position

Downs points to Minnesota Life's acknowledgement that the "Administration Manual" provides general guidance to banking institutions that offer Minnesota Life insurance products to their borrowers, and argues that it is clear that it governs the duties and obligations of Wells Fargo in relation to the insurance policy at issue in this case. (Doc. # 264 at 9.)

Downs also argues that Schmidt's declaration indicates that the "Administration Manual" does in fact speak to claims handling because it contains a section related to the reporting of death claims, which Minnesota Life produced. (Doc. # 264 at 9-10.) She points to the language in that section which states: "If an insured borrower dies, please notify us as soon as possible, so we may begin processing the claim. The Notice of Death form F11933 should be submitted along with a certified death certificate." (*Id.* at 10.) From this, Downs contends that Wells Fargo was required to notify Minnesota Life as soon as possible of Mr. Downs' death so that Minnesota Life could begin processing the claim for payment of the Downs' mortgage, and that Wells Fargo was also required to provide Minnesota Life with a Notice of Death Form F1933, which has not been produced by either party. (*Id.*)

Downs argues that because this document was provided to its financial clients, which would include Wells Fargo, to provide guidance regarding the policy at issue, Wells Fargo had contractual duties related to the mortgage payment protection insurance policy and claim handling in the event of Mr. Downs' death, which included notifying Minnesota Life of Mr. Downs' death and providing specific forms related to the claim for payment. (*Id.*)

Finally, Downs asserts that because the "Administration Manual" provides guidance regarding the subject policy and spells out duties of Minnesota Life and Wells Fargo, it should be produced in its entirety. (*Id.* at 11.)

### D. Discussion

Without explicitly stating it, Downs is essentially arguing that the "Administration Manual" is discoverable in its entirety because the one-page Minnesota Life did produce

indicates that it may reveal obligations that were supposed to have been undertaken by Wells Fargo in connection with a policy such as that issued to the Downs.

Minnesota Life, on the other hand, contends that the "Administration Manual" does not relate to claims handling, and the section it voluntarily produced relates to third-party claim reporting, which it alludes to being claim reporting by a claimant such as Mrs. Downs, and not reporting from Wells Fargo to Minnesota Life.

The A&M Agreement between Minnesota Life and Wells Fargo is the document which makes reference to the "Administration Manual" giving rise to this dispute. (Doc. # 264-3 at 15, ¶ 4.2.) The specific paragraph making reference to the "Administration Manual" discusses "premium collection" and states: "All premiums collected for insured Customers, along with reconciliation data regarding all premiums remitted, *as fully outlined in the respective Administration Manuals for each of the Plans*, shall be remitted to Minnesota Life by Plan Administrator within fifteen (15) days following the last day of the month in which such premiums are collected..." (*Id.*, emphasis added.)

While Minnesota Life contends that this is a "generic" document, it concedes that it does provide "general guidance to banking institutions that offer Minnesota Life insurance products to their borrowers." (Doc. # 264 at 6:18-20.) Thus, it appears it would have been provided to Wells Fargo. While it may not provide specific contractual duties as between Wells Fargo and Minnesota Life, at least the page voluntarily produced by Minnesota Life appears relevant under Rule 26 to Downs' remaining claims against Wells Fargo insofar as Downs contends that it discusses action that should be taken by banking institutions who offer Minnesota Life's insurance products to its borrowers. Minnesota Life's statement that the page of the "Administration Manual" it voluntarily produced (relating to death claim reporting) would pertain to a third party, such as Mrs. Downs, reporting a death is plainly contradicted by a reading of that provision and Minnesota Life's acknowledgement that this document provides guidance to banking institutions, such as Wells Fargo.

The issue, then, is whether the remainder of the "Administration Manual" should be produced to Downs. Downs speculates that it may contain additional information relevant to its

claims against Wells Fargo and the duties of Wells Fargo and Minnesota Life, and also argues that it would give context to the one page that was produced. (*See* Doc. # 223 at 3:7-11.) Minnesota Life maintains that it has met its obligation by producing the Schmidt affidavit which confirms the document does not relate to claims handling procedures. The court cannot discern from the one page of the "Administration Manual" that was produced whether the remainder of the document may contain information relevant to Downs' claims against Wells Fargo; but, because Minnesota Life acknowledges that the document provides general guidance to banking institutions such as Wells Fargo regarding its insurance products, like the one at issue in this case, there appears to be a likelihood that it is at least relevant and discoverable under Rule 26 insofar as Downs' claims against Wells Fargo are concerned.

In an effort to resolve this issue, the court will require Minnesota Life to either provide the "Administration Manual" to Downs for her review; or, if it is not so inclined, it may submit the document to the court for an in camera review. Whichever election it makes shall be **WITHIN TEN DAYS OF THE DATE OF THIS ORDER**. The court will then hold a hearing, if necessary, or issue an order with its ruling regarding whether or not the remainder of the "Administration Manual" should be produced to Downs.

**IT IS SO ORDERED**.

Dated: October 17, 2014.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE