1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

LINDA DOWNS,                                         3:11-cv-00885-LRH-WGC

                                    Plaintiff,       **ORDER**

        v.                                           Re: Remaining Downs-Wells Fargo
                                                     Discovery Dispute
RIVER CITY GROUP, LLC, et. al.,

                                    Defendants.

        The court issues this Order with respect to the remaining discovery dispute between

Plaintiff Linda Downs (Downs) and defendant Wells Fargo Bank, N.A. (Wells Fargo).[1]

## I. BACKGROUND

        The facts and procedural history leading up to the issuance of this Order are set forth in

Judge Hicks' September 17, 2014 order (Doc. # 257)[2], and the undersigned's September 24, 2014

order on remand (Doc. # 258). In accordance with the court's order on remand, Downs and Wells

Fargo have submitted memoranda outlining the remaining areas of dispute concerning discovery

between them. (Doc. # 265 (Downs); Docs. # 266, #266-1[3] (Wells Fargo).) They identified the

following  areas that remain in dispute: (1) Wells Fargo's alleged failure to prepare its Rule

30(b)(6) designees, including Jessica Jones (Jones) and Luann Tupa (Tupa); (2) Wells Fargo's

alleged failure to produce documents identified in various Rule 30(b)(6) depositions; (3) Wells

Fargo's purported deficient responses to written discovery, including interrogatories and requests

for production of documents; (4) Wells Fargo's alleged failure to provide adequate privilege logs;

---

[1] A separate order was entered concerning the remaining discovery dispute between Downs and Minnesota Life Insurance Company (Minnesota Life). (Doc. # 267.)

[2] Refers to court's docket number.

[3] Doc. # 266-1 consists of 762 pages of documents Wells Fargo represents it has produced to Downs. (*See* Doc. # 266 at 2-3.)

1    and (5) the alleged failure of Wells Fargo to produce documents related to the *Dollens* case. The

2    court will now summarize the positions of the parties and provide its analysis and direction with

3    respect to these remaining discovery issues.

4                    **II. PREPARATION OF RULE 30(b)(6) DESIGNEES**

5          Downs argues that Wells Fargo failed to adequately prepare its designated Rule 30(b)(6)

6    witnesses, Jones and Tupa for their depositions. (Doc. # 265 at 1-2.) Downs asserts that the

7    witnesses were unprepared at their first depositions that took place on November 14 and 15,

8    2012, and were still unprepared at their second depositions on February 1, 2013. (*Id*.)

9          Wells Fargo contends that the lack of knowledge on the part of any witness was based on

10   questions that were beyond the scope of the deposition notice, and when a witness did not have

11   answers to questions, they were supplied by another witness. (Doc. # 266 at 2.) Wells Fargo

12   asserts that it produced three 30(b)(6) witnesses who provided more than seventeen hours of

13   deposition testimony and Downs' dislike for their testimony does not mean they were

14   unprepared. (*Id*.)

15   **A. Jones Depositions**

16         Wells Fargo designated Jones to testify regarding the following topics: (1) foreclosure

17   process; (b) the payment protection policy; (c) policies and procedures, internal auditing, quality

18   control and training; (d) loss mitigation; (e) records retention, phone logs, and technology; and

19   (f) miscellaneous items. (Doc. # 265 at 1-2.) Downs identifies various areas of purported

20   deficiency with respect to Jones' depositions.

21         First, Downs argues that Jones could not speak to and did not know the specific

22   guidelines Wells Fargo followed/used in this matter. (Doc. # 265 at 2.) She asserts that Paul

23   Goers, a Wells Fargo employee told others at Wells Fargo investigating the Downs' claim that

24   the "Investors and Foreclosure" group's rules governed when and if a loan could go into

25   foreclosure, but these rules were not disclosed by Jones or produced by Wells Fargo. (*Id*. at n. 2.)

26         In her deposition, Jones testified that Wells Fargo utilized the note, deed of trust, and

27   Freddie Mac guidelines in order to service the subject loan. (Doc. # 235-2 at 5-8, Feb. 1, 2013

28   Jones Depo. at 13-16.) Jones testified that the Freddie Mac guidelines Wells Fargo followed are

1    publicly available on Freddie Mac's website. (*Id.*) While counsel tried to ask Jones what specific

2    guidelines were utilized in servicing the loan, it was Jones' testimony that Wells Fargo serviced

3    the loan utilizing all of the Freddie Mac guidelines. (*Id.*) If Downs had a question about the use

4    of a specific guideline, she could have posed more specific questions, but chose not to. While

5    Downs now argues that some other rules were utilized in determining whether a loan could go

6    into foreclosure, *i.e.*, the Investor and Foreclosure group's rules, that was not Jones' testimony.

7    Downs does not state what other information she seeks to gain from this witness on this topic. As

8    such, there does not appear to be any further basis for examining this witness regarding this

9    issue.

10        Second, Downs claims that Jones did not know who created the timeline on WELLS

11   1681 and could not answer questions regarding the timeline. (Doc. # 265 at 2.) Wells Fargo is

12   correct that Tupa testified that *she herself* created the timeline. Downs had an opportunity to

13   question Tupa, the author of the timeline, about the document. Therefore, there is no basis to

14   compel any further testimony from Jones on this subject.

15        Third, Downs contends Jones did not know anything about the Foreclosure Overview

16   found on WELLS 1733 and did not know about prior versions of the document. (Doc. # 265 at

17   2.) Wells Fargo argues that Jones testified that Wells Fargo authored the Foreclosure Overview,

18   and while she did not know if there were prior versions of the document, this is immaterial as

19   Downs did not ask Jones any further questions about the document. (Doc. # 235 at 6.)

20        Downs' counsel did ask Jones several substantive questions about the document in her

21   second deposition. (*See* Doc. # 192-1 at 8, Feb. 1, 2013 Jones Depo. at 22 -29.) Downs does not

22   explain how this document (or any other version of it) is relevant to her remaining claims or

23   what else she intends to elicit from this witness concerning this document. As such, the court

24   finds no basis for compelling further testimony on this subject.

25        Fourth, Downs states that Jones did not know how the deed of trust was used to service

26   the Downs' loan. (Doc. # 265 at 2.) Again, Jones testified that the terms of the deed of trust,

27   along with the Freddie Mac guidelines, were used in servicing the loan. Downs does not explain

28   what further testimony she expects to elicit from this witness on this topic or how it is relevant to

1    her remaining claims. Accordingly, the court will not permit further examination of Jones on this

2    issue.

3          Finally, Downs takes issue with the fact that Jones could not answer why Wells Fargo

4    filed a notice of sale after it closed the foreclosure in November of 2011. (Doc. # 265 at 2.) Wells

5    Fargo explains that Jones and Wells Fargo would not have had this information because MTC

6    Financial, not Wells Fargo, executed and recorded the notice of sale. (Doc. # 235 at 7-8.) In light

7    of this, the court agrees that Downs should have obtained this information from MTC Financial,

8    and not Wells Fargo.

9    **B. Tupa Depositions**

10         Tupa was designated to testify regarding communications with Minnesota Life. (Doc. #

11   265 at 2.) Downs identifies several ways in which Tupa was allegedly unprepared.

12         First, Downs asserts that Tupa did not know what timeline Paul Goers was referencing

13   with regards to the timeline provided by Optional Services (Tupa's department). (Doc. # 265 at

14   2.) This is belied by Tupa's own testimony, where she stated that she believed that WELLS 1681

15   is the timeline that she created and sent in the email to Paul Goers, which Goers discussed in his

16   email at WELLS 538. (Doc. # 235-1 at 5, Feb. 1, 2013 Tupa Depo. at 7:3-17.) Therefore, there is

17   no basis for compelling further examination on this topic.

18         Second, Downs claims that Tupa did not know why some of the Minnesota Life

19   payments were sent back to Downs. (Doc. # 265 at 2.) Wells Fargo points out that Jones testified

20   extensively on this topic. (Doc. # 235 at 8.) It is true that Jones was questioned and did provide

21   some testimony on this topic. (*See, e.g.*, Doc. # 110-4 at 16-17, Nov. 14, 2012 Jones Depo. at

22   254-260.) At Jones' November 14, 2012 deposition Wells Fargo's counsel did represent that Tupa

23   would testify as to the process Wells Fargo may have had in place at the time the payments were

24   received from Minnesota Life. (*Id.*, Jones Depo. at 260:3-11.)

25         Tupa testified that the foreclosure department sent funds back to the mortgagor that were

26   the claim check funds, and when she was asked why they sent the payments back, Tupa testified

27   that it was done by the foreclosure department and that question would have to be posed to them.

28   (Doc. # 110-6 at 28, Nov. 15, 2012 Tupa Depo. at 104:5-16.) After receiving this response,

1    counsel moved on from this line of questioning. (*Id.*) Later in the deposition, the discussion

2    returned to this topic. Tupa testified regarding application of the funds: "Our department

3    received the check, sent the funds to Cash, asked them to make the mortgage payments. They

4    and Foreclosure had processes that they need to follow. I believe those funds were sent back to

5    the mortgagor." (Doc. # 110-7 at 3, Nov. 15, 2012 Tupa Depo. at 134:1-7.) She was then asked

6    why the funds were sent back to the mortgagor, and testified again that question would have to

7    be addressed with the foreclosure department. (*Id.* at 134:8-14.) When counsel asked whether

8    there would be another Rule 30(b)(6) witness to testify as to this issue, Wells Fargo's counsel

9    indicated that the Rule 30(b)(6) witness who would testify as to that topic was Jones, who had

10   testified the day before. (*Id.* at 134:15-18.) Downs' counsel then moved on to another line of

11   questioning. Tupa was asked this same question later on in the deposition, and responded,

12   consistent with her previous responses, that Downs would have to ask the foreclosure department

13   why payments were returned to Downs. (*Id.* at 231:19-25, 234:25-235:6.)

14        Downs then deposed both Jones (who was designated as to foreclosure issues) and Tupa

15   again in February 2013. In her second deposition, Jones testified that some funds received from

16   Minnesota Life were returned (and not applied to the loan). (Doc. # 192-1 at 20, Feb. 1, 2013

17   Jones Depo. at 72:6-10, 17-21.) Downs' counsel was afforded the opportunity to ask Jones, who

18   had been designated on the topic of foreclosure, and identified by Tupa as the person who would

19   have knowledge on this topic, why the payments were sent back to Downs. Downs' counsel did

20   not do so. In light of this, the court is not inclined to allow further examination on this topic.

21   **III. DOCUMENTS IDENTIFIED DURING RULE 30(b)(6) DEPOSITIONS BUT NOT**

22   **PRODUCED**

23        Downs contends that various documents were identified or referenced in the Rule

24   30(b)(6) depositions, but were not produced by Wells Fargo, including the following:

25   (1) "OQM" e-mail of the "5-10" notes to Wells Fargo employee "M. Thomas"; (2) e-mails and

26   attachments to and from Tupa and Jones; (3) e-mails and letter logs and collection notes

27   referenced in Jones' deposition; (4) evidence of the "corrupted phone call" between Downs and

28

- 5 -

Wells Fargo[4]; (5) the checks/correspondence sent to "Cash", including e-mails and correspondence included with those reports as referenced in Tupa's deposition; (6) the "P112 Report" along with related correspondence; (7) the Optional Product Payment Reports and Optional Product Maintenance Reports; (8) documentation of discussions had regarding the "process gap"; (9) e-mails to and from Shannon Eckert and Renee Biernat with attached copies of the direct mail kit previously used for the "Secure 12" product and other materials and information related to this including a master confidentiality agreement; (10) the exact e-mail kit sent to Downs. (Doc. # 265 at 3.)[5]

Wells Fargo asserts that it has produced all of the documents Downs contends have not been produced, or has withheld them on privilege grounds. (Doc. # 266 at 2-3.) Wells Fargo has provided a table listing categories of documents either produced or withheld on privilege grounds, and has attached an exhibit consisting of 762 pages of documents it has produced. (Doc. # 266 at 2-3; Doc. # 266-1.) The court notes that Wells Fargo's memorandum indicates that the documents regarding the "process gap" and post-litigation e-mail communications between Jones and Tupa and Shannon Eckert and Renee Biernat are privileged, and will be covered in a supplemental privilege log. (Doc. # 266 at 3.)

Downs is directed to provide a statement to the court within the timeframe prescribed below addressing whether this issue has been resolved, and what documents, if any, remain to be produced. Prior to submitting this statement, if any areas of dispute remain, the parties are directed to engage in a meaningful meet and confer to attempt to resolve the dispute.

## IV. INTERROGATORIES

Downs claims that Wells Fargo failed to respond to interrogatories 10, 12 and 18. (Doc. # 265 at 4.)

Wells Fargo argues that Downs' assertion that Wells Fargo did not respond to

---

[4] According to Downs, Wells Fargo has represented that this document would be produced, but had not been as of the date of the filing of her memorandum. (Doc. # 265 at 3 n. 3.)

[5] There were additional items identified by Downs (timeline Debra Douglas prepared on behalf of Wells Fargo, e-mail and attached timeline from Tupa to Goers, and "Optional Product Check" spreadsheet) that Wells Fargo has since produced. (*See* Doc. # 265 at 3 n. 4, n. 5, n. 6.)

interrogatories 10, 12, and 18 is incorrect, and in reality, Downs simply does not like the responses received. (Doc. # 266 at 3.)

Interrogatory 10 asks Wells Fargo to: "State whether the federal government has a financial interest in the Note by way of underwriting, guarantee, indemnification or ownership." (Doc. # 192-4 at 8.) Wells Fargo responded:

> Objection- this interrogatory requests information that is not reasonably calculated to lead to discovery of admissible evidence. Wells Fargo also objects to this interrogatory as vague and ambiguous because it is not clear what plaintiff means by "the federal government" or "a financial interest in the Note by way of underwriting, guarantee, indemnification or ownership."
> Subject to and without waiving these objections, Wells Fargo states that the Federal Home Loan Mortgage Corporation is the investor for the loan the Note evidences.
> Discovery is continuing, and Wells Fargo reserves the right to supplement this response in the event that further relevant facts become available.

(Doc. # 192-4 at 8.)

In her prior motion to compel, Downs argued: "[Wells Fargo has failed to describe the Federal Home Loan Mortgage Corporation's interest in the "Note." Merely stating that it is an investor means nothing.]" (Doc. # 222 at 6.) Wells Fargo contends that this response clearly discloses that Freddie Mac is the owner of the loan. (Doc. # 235 at 9.) The response says that "the Federal Home Loan Mortgage Corporation is the investor for the loan," but does not state that it owns the loan. Wells Fargo shall supplement its response to Interrogatory 10 to reflect its representation that Freddie Mac is the owner of the loan (as stated in Doc. # 235 at 9).

Interrogatory 12 asks Wells Fargo to: "State all state and federal pre-suit default prevention procedures you undertook prior to this action." (Doc. # 192-4 at 8.) Wells Fargo responded:

> Objection - this interrogatory requests information that is not reasonably calculated to lead to discovery of admissible evidence. This interrogatory is also vague and ambiguous, particularly because it is not clear what plaintiff means by "state and federal pre-suit default prevention procedures."
> Subject to and without waiving these objections, Wells Fargo states that it is the borrower's responsibility to avoid default.
> Discovery is continuing, and Wells Fargo reserves the right to supplement this response in the event that further relevant facts become available.

(Doc. # 192-4 at 8.)

This response does not answer the question posed. Wells Fargo shall supplement its response to Interrogatory 12. If Wells Fargo is not clear as to what type of state and federal pre-

suit default prevention procedures Downs is referring to, it shall meet and confer with Downs to clarify what she means.

Interrogatory 18 asks Wells Fargo to: "State the relationship between Wells Fargo and Minnesota Life Insurance Company, including when the relationship began and ended." (Doc. # 192-4 at 13.) Wells Fargo responded:

> Objection - this interrogatory requests information that is not reasonably calculated to lead to discovery of admissible evidence. This interrogatory is also vague and ambiguous, particularly because it is not clear what plaintiff means by "the relationship between Wells Fargo and Minnesota Life Insurance Company." In addition, this interrogatory calls for information that is protected by the attorney-client privilege and/or the attorney work product doctrine. Wells Fargo also objects to this interrogatory because it is compound, overbroad and unduly burdensome.
>
> Subject to and without waiving these objections, Minnesota Life underwrote a group monthly benefit mortgage life insurance policy for Wells Fargo. The group policy number is 400752-G.
>
> Discovery is continuing, and Wells Fargo reserves the right to supplement this response in the event that further relevant facts become available.

(Doc. # 192-4 at 14.)

Wells Fargo gives an adequate description of its relationship with Minnesota Life, but the response is incomplete because it does not state when its relationship with Minnesota Life began and ended. Wells Fargo shall supplement its response to Interrogatory 18 to provide this information.

## V. REQUESTS FOR PRODUCTION OF DOCUMENTS

As to the requests for production of documents, Downs contends Wells Fargo's responses to the following requests are deficient: 1, 2, 6, 8, 9, 10, 15, 16, 17, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 42, 44, 45, 46, 47, 48, 51, 52, 53, 54, 55, 56, 61, 63, 64, 65, 66, 68, 70, 71, 72 and 75. (Doc. # 265 at 4-9.)

### A. Preliminary Findings

The requests and their responses can be found in Doc. # 192-5, and requests 1, 2, 6, 8, 9, 10, 15, 16, 17, 20, 21, 22, 24-33 (those for which Downs provides a specific argument), are repeated here for convenience and reference in the discussion. Preliminarily, the court finds that Wells Fargo's reference to the universe of documents it has produced in response to a particular request is insufficient. Federal Rule of Civil Procedure 34(b)(2)(E)(i) states that documents must be produced "as they are kept in the usual course of business or [the responding party] must

1    organize and label them to correspond to the categories in the request[.]" "This rule 'is meant to

2    prevent a party from obscuring the significance of documents by giving some structure to the

3    production.'" *American General Life Ins. Co. v. Vistana Condominium Owners Ass'n,* 2014 WL

4    2041950 (D. Nev. May 16, 2014) (quoting *City of Colton v. Am. Promotional Events, Inc.*, 277

5    F.R.D. 578, 584 (C.D. Cal. 2011)). "Therefore, the production must be rationally organized to

6    enable the parties to determine if responsive documents have been produced." *Id.*

7            The court has not been provided information as to whether Wells Fargo produced its

8    documents as they are kept in the ordinary course of business; however, Wells Fargo's responses

9    that refer to nearly 3000 documents produced do nothing to aid Downs in determining which

10    documents are responsive to a particular request, and therefore, whether or not the production is

11    sufficient. While Wells Fargo contends that it had an agreement with Downs to respond in this

12    manner, it has provided no evidence of such an agreement, which Downs' obviously disputes. As

13    such, the responses shall be supplemented to identify specific documents, by bates label, that are

14    responsive to each request. The court will now address the requests for which Downs has

15    provided specific arguments regarding the deficiency of Wells Fargo's responses.

16    **B. Requests 1, 2, 6, 8-10, 15-17, 20-22, 24, 28, 33**

17

18    **Request 1**: All contracts and agreements between Wells Fargo and any person or entity
      regarding the servicing of the applicable deed of trust and/or note at issue in this matter.
      **Response to Request 1:** Objection - this Request is not reasonably calculated to lead to the
19    discovery of admissible evidence. This Request is also overly broad and unduly burdensome
      because, *inter alia*, it is not limited to a specific time frame. Wells Fargo also objects to this
20    Request to the extent it implies that deeds of trust are serviced.
              Without waiving these objections, Wells Fargo services the loan for Freddie Mac. Wells
21    Fargo states that the servicing guidelines are equally available to plaintiff and Wells Fargo, and
      that they are publicly available at www.freddiemac.com. The Freddie Mac guidelines are
22    judicially noticeable pursuant to FRE 201, and self-authenticating pursuant to FRE 902(5). Wells
      Fargo intends to rely on these materials at trial.
23            Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

24    **Discussion:**

25            Downs argues that Wells Fargo has not provided any contract/agreement between it and

26    any person/entity regarding the servicing of the applicable deed of trust and/or note at issue.

27    Wells Fargo's response merely points to the Freddie Mac guidelines but does not indicate

28    whether a contract or agreement exists with respect to the servicing of the loan for Freddie Mac

by Wells Fargo. Wells Fargo shall supplement its response to clarify whether such an agreement or contract exists, and if it does, shall produce any such document(s).

**Request 2**: All contracts and agreements between Wells Fargo and Minnesota Life Insurance Company.
**Response to Request 2**: Objection- this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it is not limited to a specific time frame and because it requests "**all** contracts and agreements between Wells Fargo and Minnesota Life Insurance Company," regardless of whether those contracts and agreements relate to this lawsuit, plaintiff, or the loan at issue. This Request is also improper because Wells Fargo's contracts and agreements are proprietary and may contain confidential information.
     Without waiving these objections, *see* WELLS 00001-WELLS 002975.
     Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

     The objection that the request is overbroad is sustained as it is true that the request is not limited in scope to documents that may be relevant to Downs' insurance policy or her loan. Limiting the request as such, Wells Fargo shall specifically identify any relevant agreements between it and Minnesota Life which have been produced. Pointing to the universe of documents produced in this action is insufficient. In addition, if the relevant document(s) have not been produced, they shall be produced in accordance with this Order.

**Request 6**: All original and intervening Assignments showing a complete chain of assignments from the originator to the person assigning the deed of trust and note to Wells Fargo.
**Response to Request 6**: Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also vague and ambiguous, particularly since plaintiff does not define "originator" or "deed of trust." Wells Fargo also objects to this Request to the extent it implies that notes are "assigned" rather than indorsed.
     Without waiving these objections, *see* WELLS 00001-WELLS 002975.
     Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion:**

     The objections are overruled as it is clear that Downs is seeking documentation concerning the assignment or indorsement of the deed of trust from its inception forward. Wells Fargo shall produce such documentation, if it has not done so already, and shall point Downs to the specific bates labels of the responsive documents.

**Request 8**: All correspondence by and between Wells Fargo and either of the Plaintiffs to this action.
**Response to Request 8**: Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome

because it is not limited to a specific time frame. This Request is also overly broad and unduly burdensome because, *inter alia*, it requests "**all** correspondence by and between Wells Fargo and either of the Plaintiffs to this action," regardless of whether that correspondence relates to this lawsuit or the loan at issue. Wells Fargo also objects to this Request to the extent it implies there is more than one plaintiff in this lawsuit. Wells Fargo further objects to this Request as duplicative of, *inter alia*, Request No. 5.

Without waiving these objections, *see* WELLS 00001-WELLS 002975.
Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

This request shall be limited to all correspondence by and between Wells Fargo and plaintiff Downs or her husband that is related to this lawsuit or the loan at issue. Wells Fargo shall produce these documents, if it has not done so already, and shall supplement its response to reflect the bates labels of the responsive documents.

**Request 9**: All correspondence by and between Wells Fargo and any Defendant to this action with regard to the subject mortgage loan.
**Response to Request 9**:
Objection- this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it is not limited to a specific time frame. This Request is also vague and ambiguous, particularly because it is not clear what plaintiff means by "mortgage loan." Wells Fargo further objects to this Request as duplicative of, *inter alia*, Request No. 5.

Without waiving these objections, *see* WELLS 00001-WELLS 002975.
Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

The objections are overruled. Wells Fargo shall produce all correspondence between it and any defendant to this action related to the subject loan, and shall supplement its response to specify the bates labels of the responsive documents.

**Request 10**: All sales contracts, servicing agreements, assignments, alonges, transfers, indemnification agreements, recourse agreements and any agreement related to this account from the inception of this account to the present date.
**Response to Request 10**:
Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it requests "**all** sales contracts, servicing agreements ...," including agreements that have no bearing on this case. This Request is also vague and ambiguous, particularly since it is not clear what plaintiff means by "account," "sales contracts ... related to this account," "transfers ... related to this account," "indemnification agreements ... related to this account," or "recourse agreements ... related to this account."

Without waiving these objections, *see* WELLS 00001-WELLS002975. In addition, Wells Fargo services the loan for Freddie Mac. Wells Fargo states that the servicing guidelines are equally available to plaintiff and Wells Fargo, and that they are publicly available at www.freddiemac.com. The Freddie Mac guidelines are judicially noticeable pursuant to FRE 201 and self-authenticating pursuant to FRE 902(5). Wells Fargo intends to rely on these

materials at trial.

Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion:**

The request is self-limiting to documents related to "this account" which can reasonably be interpreted as the loan account that is the subject of this litigation. The request is otherwise perfectly clear, and Wells Fargo shall produce responsive documents if it has not done so already, and shall supplement its response to identify responsive documents by bates label. It is not required to produce the Freddie Mac guidelines, which the court recognizes are publicly available.

**Request 15**: The Investor Loss Mitigation and Loan Modification Guidelines related to Plaintiffs' mortgage loan.

**Response to Request 15:**

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it is not limited to a specific time frame and because it requests all "Investor Loss Mitigation and Loan Modification Guidelines," regardless of whether plaintiff applied for that particular loss mitigation program. This Request is also vague and ambiguous, particularly since it is not clear what plaintiff means by "Investor Loss Mitigation and Loan Modification Guidelines related to Plaintiff's mortgage loan." This request is also improper because it seeks information to which plaintiff and Wells Fargo have equal access.

Without waiving these objections, Wells Fargo services the loan for Freddie Mac. Wells Fargo states that the loss mitigation and loan modification guidelines are equally available to plaintiff and Wells Fargo, and that they are publicly available at www.freddiemac.com. The Freddie Mac guidelines are judicially noticeable pursuant to FRE 201 and self-authenticating pursuant to FRE 902(5). Wells Fargo intends to rely on these materials at trial.

Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

This request is also self-limiting to those documents that are related to Downs' loan. Wells Fargo shall supplement its response to clarify whether the Freddie Mac guidelines referenced are the only responsive documents to this request. If so, it need not produce any additional documentation. If there are additional responsive documents, they shall be produced in accordance with this Order.

**Request 16**: All documents recording, reflecting or otherwise relating to visits which Wells Fargo or YOUR agents made to the Subject Property.

**Response to Request 16**:

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it is not limited to a specific time frame. This Request is also vague and ambiguous, particularly since it is not clear what plaintiff means by "Subject Property." Wells Fargo also objects to this Request because it requests documents that are not in Wells Fargo's possession or control.

- 12 -

Without waiving these objections, *see* WELLS 00001-WELLS 002975.

Discovery is ongoing and Wells Fargo reserves the right to supplement its response.

**Discussion:**

Wells Fargo shall supplement its response to reflect what documents in its possession, custody or control were produced that are responsive to this request, identifying the documents by specific bates label.

**Request 17**: All accounting servicing transaction records, ledgers, registers and similar items detailing how Plaintiff's account has been serviced from the inception of the account to the present date.

**Response to Request 17**:

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also vague and ambiguous, particularly since it is not clear what Plaintiff means by "items detailing how Plaintiff's account has been serviced from the inception of the account to the present date." This Request is also overly broad and unduly burdensome.

Without waiving these objections, *see* WELLS 00001-WELLS 002975.

Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

Wells Fargo's objections are overruled as baseless. The request is sufficiently clear, and Wells Fargo gives no indication as to how it is overly broad or unduly burdensome. Wells Fargo shall supplement its response to identify, by bates label, the specific documents it has produced that are responsive to this request.

**Request 20**: Each and every canceled check, money order, draft, debit or credit notice issued to any servicers of Plaintiffs' account for paying of any monthly payment, other payment, escrow charge, fee or expense on the account.

**Response to Request 20**:

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it is not limited to a specific time frame. This Request is also vague and ambiguous, particularly since it is not clear what plaintiff means by "Plaintiffs' account." This Request also calls for documents that are not within Wells Fargo's possession or control. Wells Fargo also objects to this Request to the extent it implies there is more than one plaintiff in this action.

Without waiving these objections, *see* WELLS 00001-WELLS002975.

Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

Wells Fargo's objections are overruled, except that Wells Fargo is only required to produce documents in its possession, custody or control. Wells Fargo shall supplement its response to identify the responsive documents by bates label.

**Request 21**: All data, information, notations, text, figures and information contained in your mortgage and accounting computer systems including, but not limited to Alltel or Fidelity CPI

- 13 -

system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicers of Plaintiffs' mortgage account from the inception of Plaintiffs' account to the present date.

**Response to Request 21**:

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it requests "**all** data, information, notations ...," regardless of whether the data, information, notations, texts, figures, and information refer to plaintiff, the loan at issue, or the property at issue. This Request is also vague and ambiguous, particularly because it is not clear what Plaintiff means by "data, information, notations ..." Wells Fargo also objects to this Request because it seeks documents that are not in Wells Fargo's possession or control.

Without waiving these objections, *see* WELLS 00001-WELLS002975.

Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

The court agrees that it is not clear exactly what Downs is seeking via this request, and it appears it may seek documentation or information that is not related to this action. The parties shall meet and confer to determine what exactly it is that Downs seeks to obtain in this request and see if an informal resolution can be reached.

**Request 22**: All descriptions and legends for all Codes used in YOUR mortgage servicing and accounting system so as to enable the examiners and auditors and experts retained to audit and review this mortgage account to properly carry on their work.

**Response to Request 22**:

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request also calls for documents that are not within Wells Fargo's possession or control and/or documents that are confidential and proprietary. This Request is also overly broad and unduly burdensome.

Without waiving these objections, *see* WELLS 00001-WELLS002975.

Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

**Discussion**:

The parties shall meet and confer and discuss whether any specific documents have been produced in response to this request, and determine whether any additional codes need to be provided to allow Downs or any expert to adequately analyze the documents produced in this action. If documents are confidential or proprietary, it should be discussed whether they can be viewed subject to a confidentiality agreement to alleviate any concerns about disclosure.

**Request 24**: All records for any custodial accounts used for any purpose in connection with Plaintiff's mortgage loan including the date, amount and source of all deposits in such accounts and their date, amount and purpose for all disbursements including the name and address of any party who received any such disbursement.

**Response to Request 24**:

Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also vague and ambiguous, particularly because it is not clear what plaintiff means by "custodial accounts." This Request is also overly broad and unduly burdensome."

Without waiving these objections, *see* WELLS 00001-WELLS02975.

- 14 -

1    Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

2    **Discussion:**

3    Wells Fargo's objections are overruled. Wells Fargo shall supplement its response to

4    identify, by bates label, the specific documents that are responsive to this request.

5

6    **Request 28:** All collection notes, reports, memos, statements, entries, data records, computer records, daily records, calendar reports, default reports, collection contacts, collection reports or other documents generated in connection with the servicing of Plaintiff's mortgage loan.

7    **Response to Request 28:**

8    Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter alia*, it is not limited to a specific time frame and because it requests "all collection notes,

9    reports, memos ... ," regardless of whether the [documents] are related to the issues in this lawsuit. Wells Fargo also objects to this Request because it seeks documents that are not in

10   Wells Fargo's possession or control. Wells Fargo further objects to this Request as vague and ambiguous, particularly because it is not clear what plaintiff means by "collection notes, reports

11   ..."

      Without waiving these objections, *see* WELLS 00001-WELLS002975.

12   Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

     **Discussion**:

13

14   Wells Fargo's objections are overruled. Wells Fargo is ordered to supplement its response

15   to identify, by bates label, documents produced that are responsive to this request, or to produce

16   responsive documents if they have not yet been produced that are in its possession, custody and

17   control.

18   **Request 33:** All bills and invoices for property inspections for the Subject Property and copies of the front and back of all checks in payment thereof or all confirmed wire transfers in payment

19   thereof.

     **Response to Request 33**:

20   Objection - this Request is not reasonably calculated to lead to the discovery of admissible evidence. This Request is also overly broad and unduly burdensome because, *inter

21   alia*, it is not limited to a specific time frame. This Request is also vague and ambiguous, particularly since it is not clear what plaintiff means by "Subject Property." Wells Fargo also

22   objects to this Request because it requests documents that are not in Wells Fargo's possession or control.

23   Without waiving these objections, *see* WELLS 00001-WELLS002975.

     Discovery is ongoing, and Wells Fargo reserves the right to supplement this Response.

24   **Discussion**:

25   Wells Fargo's objections are overruled. Wells Fargo is ordered to supplement its response

26   to identify, by bates label, documents produced that are responsive to this request, or to produce

27   responsive documents if they have not yet been produced that are in its possession, custody and

28   control.

**C. Requests 25-27, 29-32, 34-40, 42, 44-48, 51-56, 61, 63-66, 68, 70-72, 75**

Downs provides no specific argument relative to these requests, other than to say that Wells Fargo failed to produce documents responsive to the requests. (*See* Doc. # 109, Doc. # 191, Doc. # 222, Doc. # 265 at 6-9.)

The parties are directed to meet and confer in order to resolve any dispute that remains as to these requests, and to file a statement indicating any remaining areas of dispute within the time parameters indicated below.

**D. Additional Documents**

In addition, Downs contends that the following documents still need to be produced: communications between Wells Fargo and Minnesota Life, including "load files," ".txt reports," "P309 pay history," "reports from S206 and the 216 remittance detail that the product provider would see for the M9 plan code for product payments for UIN: HHWXHPVVVR," and other reports and pay history described on WELLS 002098; the "LPS system" information; information regarding an "image viewer system;" information regarding a "foreclosure referral system;" an electronic referral from Wells Fargo to Trustee Corps; the "My Network" file referred to on WELLS 475; the "MSP system;" Downs' information in the "LIV system;" the "OPUS" system information; all archives not produced at Tupa's deposition; all Wells Fargo notations of the file after receiving critical letters from Minnesota Life; the spreadsheet "Optional" created for the checks received from Minnesota Life and spreadsheet sent to "Cash" and related e-mails; the timeline created by Tupa; the guidelines Wells Fargo followed/used in servicing Downs' loan. (Doc. # 265 at 9-10.)

Wells Fargo states that while Downs insists certain documents have not been produced, in fact they have. (Doc. # 266 at 2.) Wells Fargo attaches a copy of documents it has produced as Exhibit A to its memorandum. (*Id.*)  Exhibit A to Wells Fargo's memorandum consists of 762 pages. (Doc. # 266-1.) Wells Fargo's memorandum also contains a table providing a general index of these documents. (Doc. # 266 at 2-3.)

Downs is directed to notify the court within the time parameters set forth below whether the production identified in Wells Fargo's memorandum resolves the issue with respect to the

1    documents Downs claims were not produced. If any deficiency remains, the parties are directed

2    to engage in a meaningful meet and confer effort to resolve the dispute before reporting that

3    court intervention is necessary.

4                                    **VI. PRIVILEGE LOG**

5           Downs asserts that Wells Fargo has failed to provide an adequate privilege log, and

6    instead has provided two deficient privilege logs. (Doc. # 265 at 11.) She claims that they cover

7    only a limited number of documents, and for those covered, they do not provide the identities of

8    the sender or recipient or even the general subject matter of the communications. (*Id*.) She

9    requests that Wells Fargo be required to update the logs with all requested information, and

10   provide a complete privilege log as to all withheld documents, including the referral to Trustee

11   Corps, and all documents and communications with Trustee Corps and Minnesota Life. (*Id*.)

12          Wells Fargo states that it previously agreed to supplement its privilege log, but believed

13   this issue became moot when Wells Fargo filed its motion for summary judgment and Downs did

14   not request discovery under Federal Rule of Civil Procedure 56(d). (Doc. # 266 at 4.)

15   Nevertheless, Wells Fargo served Downs with a supplemental privilege log on October 14, 2014.

16   (*Id*.)

17          Preliminarily, Downs' failure to request discovery under Rule 56(d) did not obviate Wells

18   Fargo's agreement to provide a supplemental privilege log, because there may be documents

19   identified in the log that Downs may wish to contest the validity of the privilege of for use at

20   trial.

21          Downs is directed to submit a statement within the time parameters set forth below

22   indicating whether or not she deems the supplemental privilege log (served on October 14, 2014)

23   to be satisfactory, and if she deems it to be unsatisfactory, outlining in specific detail those areas

24   she deems deficient. This statement, however, must be preceded by a sincere meet and confer

25   effort to resolve any remaining dispute.

26                                  **VII. *DOLLENS* CASE**

27          Downs contends that Wells Fargo should have disclosed a New Mexico case, *Dollens v.*

28   *Wells Fargo Bank, et. al.*, D-202-CV-2011-05295. Downs asserts that the details of the case

1    were disclosed in a March 7, 2014 USA Today newspaper article. Downs argues that the *Dollens*

2    case, filed on May 16, 2011, should have been disclosed under Rule 26 and in response to

3    Downs' request for production of documents 29, served on Wells Fargo on March 30, 2012,

4    which asked for:

5    > All documents which relate to, refer to or evidence any and all civil actions,
     > adversary proceedings, arbitrations, or administrative proceedings that have been
6    > filed against Wells Fargo at any time in the past 60 months for any alleged
     > misconduct related to mortgage servicing on foreclosures.

7    (Doc. # 265 at 10.) Wells Fargo did not respond to the request. (*Id.*)

8        Downs also notes that both Tupa and Shannon Eckert were designated as 30(b)(6)

9    witnesses in the *Dollens* case and in this case, and testified in the *Dollens* case two weeks prior

10   to testifying in this case, and contends that they avoiding talking about the details of the *Dollens*

11   case. (Doc. # 265 at 10-11.) Downs contends that Wells Fargo should be compelled to disclose

12   the entire *Dollens* file. (*Id.*)

13       Wells Fargo argues that the *Dollens* issue is not properly before the court because it was

14   not raised in any of the pertinent motions to compel filed by Downs against Wells Fargo, and

15   was only first raised in Downs' March 31, 2014 objection to the undersigned's order denying her

16   most recent motion to compel. (Doc. # 266 at 1.) In addition, Wells Fargo contends that Downs

17   knew of the *Dollens* case in November of 2012 when Minnesota Life disclosed it in its

18   supplemental disclosures, yet Downs failed to request any information regarding the *Dollens*

19   case in discovery in this case. (*Id.*) Wells Fargo further claims that Downs withdrew request for

20   production 29 that would have covered the disclosure of information relative to the *Dollens* case,

21   and as such she waived her right to compel the *Dollens* documents. (*Id.*)

22       First, Wells Fargo is correct that the *Dollens* issue was not raised in any of the pertinent

23   motions to compel filed by Downs against Wells Fargo (Docs. # 109, # 191, # 222). Instead, the

24   argument was raised for the first time in Downs' objection to the undersigned's order denying her

25   most recent motion to compel against Wells Fargo. (*See* Doc. # 244 at 2-10.) While request 29

26   was originally referenced (only by number, and with no specific argument) in the first motion to

27   compel filed by Downs against Wells Fargo (Doc. # 109 at 13), it was omitted from the

28   subsequent motions (Doc. # 191 at 8 and Doc. # 222 at 9).

1    Second, while Downs claimed that she first became aware of the *Dollens* case through

2    the March 7, 2014 USA Today article (*see* Doc. # 244-11 at 2), Wells Fargo is correct that

3    Minnesota Life disclosed the case in its supplemental response to Downs' request for production

4    of documents, served on November 7, 2012. (Doc. # 248 at 7; Doc. # 248-1 at 6 (identifying

5    *Dollens* case).)

6    Third, the court finds that Downs did in fact withdraw request 29, which would have

7    required disclosure of the *Dollens* case. Downs contends that she only withdrew request 29

8    because Wells Fargo's counsel specifically represented to Downs' counsel that there were no

9    documents responsive to that request. (Doc. # 244 at 11.) The court agrees with Wells Fargo that

10   it is simply not plausible that Wells Fargo's counsel would make such a representation in

11   connection with a request which asked for *all* documents relating to *all* claims made by *all*

12   private litigants and agencies throughout the United States relative to mortgage loan servicing

13   and foreclosure for five years. As Wells Fargo points out, if Wells Fargo answered this request as

14   drafted, it would have resulted in the production of millions of pages of documents. (*Id.*) In

15   addition, the fact that Downs did not re-assert an issue with respect to request 29 in her

16   subsequent motions to compel lends credibility to Wells Fargo's position that request 29 was

17   withdrawn.

18   Despite Minnesota Life's disclosure of *Dollens* on November 7, 2012, Downs did not

19   seek to renew her request for production 29 as against Wells Fargo, or propound any other

20   discovery relative to *Dollens*.

21   At the very beginning of Tupa's November 15, 2012 deposition, Downs' counsel asked

22   Tupa whether she had ever been deposed before, to which she responded she had, two weeks

23   prior. (Doc. # 244-7 at 3, Nov. 15, 2012 Tupa Depo. at 4:18-22.) She was asked what the

24   deposition was regarding, and responded: "A loan for Wells Fargo Home Mortgage that included

25   accidental death insurance." (Doc. # 244-7 at 3, Nov. 15, 2012 Tupa Depo. at 4:24-25.) She was

26   also asked whether she had been deposed in a case "similar to this case" and she responded that

27   she had not. ((Doc. # 244-7 at 3, Nov. 15, 2012 Tupa Depo. at 5:9-11.) Wells Fargo asserts that

28   Downs' counsel did not explain what he meant by "similar;" therefore, Tupa's response indicates

that she did not understand *Dollens* to be similar. (Doc. # 248 at 8.)

When she was asked what she had been deposed about in the prior case, she responded: "They were asking questions regarding our policy and procedures in regards to the claim check that came into our department." (Doc. # 244-7 at 3, Nov. 15, 2012 Tupa Depo. at 5:12-16.) When asked where the case was venued, she responded that she did not recall. (Doc. # 244-7 at 4, Nov. 15, 2012 Tupa Depo. at 6:3-4.) Downs' counsel then proceeded with other standard deposition admonitions. (*Id.*) Downs' counsel did not ask her any more questions about the specific details of that case or even if she recalled the name of the case. Downs deposed Tupa again in February 2013, and despite the *Dollens* case being disclosed by Minnesota Life on November 7, 2012, did not ask Tupa any questions about the case.

Downs' counsel did ask Shannon Eckert at her January 31, 2013 deposition whether Wells Fargo had any issues similar to the Downs' with respect to the optional product from Minnesota Life in this case, which is known as "Secure 12." (Doc. # 244-10 at 4, Jan. 31, 2013 Eckert Depo. at 90:3-19.) She testified: "not that I'm aware of." (Doc. # 244-10 at 4, Jan. 31, 2013 Eckert Depo. at 90:23.) She also responded that she did not know whether or not Wells Fargo had been sued by any other customers in relation to the "Secure 12" optional product. (Doc. # 244-10 at 4, Jan. 31, 2013 Eckert Depo. at 90:24-25-91:1-7.)

According to Wells Fargo, the specific insurance product at issue in *Dollens* was different from the product at issue in this case—the "Secure 12." (*See* Doc. # 244-12 at 3; Doc. # 248 at 8:15-16.) This is supported by Tupa's testimony in this case that the case involved an accidental death insurance claim. (Doc. # 244-7 at 3, Nov. 15, 2012 Tupa Depo. at 4:24-25.) If this is the case, Eckert's response is reasonably explained.

It is not entirely clear if the witnesses were purposefully being evasive in some of their responses or if they were simply answering the specific questions posed to them, to which Downs posed no follow up. Nevertheless, Wells Fargo is correct that the Rule 30(b)(6) deposition notice did not contain "other litigation" as a deposition topic for these witnesses.

Finally, Downs contends that Federal Rule of Civil Procedure 26 required the disclosure of *Dollens*. If Downs is asserting that the initial disclosure provision of Rule 26 requires

disclosure of *Dollens*, Downs is mistaken. Rule 26(a) requires a party to provide information for individuals with discoverable information, a copy or description of all documents the party may use to support its claims and defenses, a computation of each category of damages, and any applicable insurance agreement. Fed. R. Civ. P. 26(a)(i)-(iv). None of these categories would have resulted in the initial disclosure of the *Dollens* file.

In conclusion, the court will not compel Wells Fargo to provide documents or information relative to the *Dollens* case because: (1) she withdrew the request for production that would have required its disclosure; (2) she did not include other litigation as a topic for Wells Fargo's 30(b)(6) witnesses; and (3) she failed to conduct any discovery on the topic after Minnesota Life disclosed the case on November 7, 2012. This does not preclude Downs from obtaining information about the case independently, and she has apparently already undertaken efforts to do so as she has provided excerpts from deposition transcripts from *Dollens* in this action. (*See* Doc. # 244-8, Doc. # 244-9.)

## VIII. CONCLUSION

(1) Downs' request to compel further testimony from Wells Fargo's Rule 30(b)(6) witnesses, Jones and Tupa, is **DENIED**;

(2) Downs' request to compel Wells Fargo to provide supplemental responses to interrogatories 10, 12 and 18 is **GRANTED** as set forth herein; supplemental responses shall be provided **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**;

(3) Downs' request to compel Wells Fargo to provide supplemental responses to her requests for production of documents is **GRANTED** insofar as Wells Fargo shall supplement its responses to requests for production that identify the universe of documents by identifying specific documents responsive to each request by bates label and Wells Fargo shall supplement its responses to specific requests for production of documents (requests 1, 2, 6, 8, 9, 10, 15, 16, 17, 20, 21 (meet and confer), 22 (meet and confer), 24, and 28) as set forth herein; supplemental responses shall be provided **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER;** if Downs has further issues with these supplemental responses, a good faith meet and confer effort shall be undertaken before the filing of any additional motion on this topic;

1    (4) Downs' request to compel documents and information related to the *Dollens* case is

2    **DENIED**;

3    (5) **WITHIN TWENTY-ONE DAYS OF THE DATE OF THIS ORDER**, Downs and

4    Wells Fargo shall engage in a sincere and meaningful effort to resolve any remaining areas of

5    dispute, and submit a joint statement which outlines any remaining areas of dispute and sets forth

6    the parties respective position on such issues. The statement shall addresses, at a minimum:

7    (a) Whether any issue remains as to the production of documents identified or

8    referenced in Wells Fargo's Rule 30(b)(6) depositions;

9    (b) Whether any issue remains as to Wells Fargo's responses to requests for

10   production 25-27, 29-32, 34-40, 42, 44-48, 51-56, 61, 63-66, 68, and 70-72, as well as the other

11   documents Downs contends should have been produced by Wells Fargo;

12   (c) Whether or not the supplemental privilege log served by Wells Fargo on

13   October 14, 2014 is adequate.

14   **IT IS SO ORDERED**.

15   Dated: October 27, 2014.

_____

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23

24

25

26

27

28

- 22 -