UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| LINDA DOWNS, | ) | |
| | ) | |
| Plaintiff, | ) | 3:11-CV-00885-LRH-WGC |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| RIVER CITY GROUP, LLC; *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

Before the court are defendant Wells Fargo Bank, N.A.'s ("Wells Fargo") three remaining pretrial motions in limine: (1) motion in limine to exclude other litigation, complaints, investigations, settlements, or other unrelated matters (Doc. #281[1]); (2) motion in limine to exclude Beverly Paschal's and Dr. Richard Harris' testimony (Doc. #299); and (3) motion in limine to exclude expert Thomas Tarter (Doc. #302). Plaintiff Linda Downs ("Downs") filed oppositions to each of Wells Fargo's motions (Doc. ##310, 346, 345 respectively) to which Wells Fargo replied (Doc. ##321, 352, 353).

**I.   Facts and Procedural History**

In July, 2005, Downs, along with her husband Ronald, purchased real property through a mortgage note and deed of trust. In early December 2009, Downs and her husband purchased a mortgage payment protection insurance policy advertised by defendant Wells Fargo and

---

[1] Refers to the court's docket number.

1  underwritten by defendant Minnesota Life Insurance Company ("Minnesota Life"). The policy
2  provided for twelve (12) monthly payments of $2,398.23 - the amount of the Downs' monthly
3  mortgage payment - to Wells Fargo in the event of Ronald's death.
4        On May 31, 2010, Ronald passed away. On June 10, 2010, Downs contacted both Wells
5  Fargo and Minnesota Life, notified them of Ronald's passing, and requested disbursement of the
6  payments pursuant to the mortgage insurance policy. On August 18, 2010, Minnesota Life
7  approved Downs' claim for payment, and sent Wells Fargo a check for $9,572.92 - the amount
8  owed for the mortgage payments from May 2010, through August 2010. Thereafter, Minnesota
9  Life made payments in accord with the payment schedule as prescribed under the policy. However,
10 prior to the disbursement of funds in August 2010, Wells Fargo initiated non-judicial foreclosure
11 proceedings against the underlying property.
12       Subsequently, Downs filed a complaint alleging ten causes of action against all defendants:
13 (1) intentional infliction of emotional distress; (2) negligent infliction of emotional distress;
14 (3) breach of contract; (4) breach of the implied covenants of good faith and fair dealing; (5) unfair
15 claims practices; (6) conspiracy to defraud; (7) negligence; (8) invasion of privacy; (9) unjust
16 enrichment; and (10) quiet title. Doc. #1, Ex. A. After a series of motions to dismiss and motions
17 for summary judgment, the only remaining defendant is defendant Wells Fargo.
18       On January 12, 2015, Wells Fargo filed the present motions in limine to address various
19 evidentiary issues related to some of Downs' anticipated exhibits and witnesses. The court shall
20 address each motion below.
21 **II.   Legal Standard**
22     A motion in limine is used to preclude prejudicial or objectionable evidence before it is
23 presented to the jury. Stephanie Hoit Lee & David N. Finley, *Federal Motions in Limine* § 1:1
24 (2012). The decision on a motion in limine is consigned to the district court's
25 discretion—including the decision of whether to rule before trial at all. *See Hawthorne Partners v.*
26 *AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) (noting that a court may wait to

resolve the evidentiary issues at trial, where the evidence can be viewed in its "proper context"). Motions in limine should not be used to resolve factual disputes or to weigh evidence, and evidence should not be excluded prior to trial unless "the evidence [is] inadmissible on all potential grounds." *See, e.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). Even then, rulings on these motions are not binding on the trial judge, and they may be changed in response to developments at trial. *See Luce v. United States*, 469 U.S. 38, 41 (1984).

Generally, all relevant evidence is admissible. FED. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The determination of whether evidence is relevant to an action or issue is expansive and inclusive. *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384-87 (2008). However, the court may exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. Further, evidence may be excluded when there is a significant danger that the jury might base its decision on emotion or when non-party events would distract reasonable jurors from the real issues in a case. *See Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v. Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

**III. Discussion**

    **A. Motion in Limine to Exclude Other Litigation, Complaints, Investigations, Settlements, or Other Unrelated Matters (Doc. #281)**

In her proposed exhibits and witness lists, Downs seeks to offer evidence of other litigation involving Wells Fargo, in particular evidence of *Dollens v. Wells Fargo*, as well as evidence involving a settlement between Wells Fargo and the Comptroller of the Currency. In the present motion, Wells Fargo seeks to exclude all evidence, testimony, and documentation about both issues. *See* Doc. #281. The court shall address each issue separately below.

///

### 1. *Dollens* Case

Wells Fargo seeks exclusion of all evidence relating to the *Dollens v. Wells Fargo* case, a state court case from New Mexico, which involves a similar factual pattern involving Wells Fargo's attempts to foreclose on property before the payment of mortgage insurance. In her exhibit list, Downs has listed as exhibits the second amended complaint in *Dollens*, Wells Fargo's answer to the second amended complaint, the court's final findings of fact and conclusions of law, and the final judgment against Wells Fargo. Additionally, Downs has identified two witnesses that would testify about the *Dollens* case: Beverly Decaro and Andrew Pizor.

The court has reviewed Wells Fargo's motion and finds that evidence relating to the *Dollens* case is both relevant and admissible in this action under the Federal Rules of Evidence. In particular, the court finds that evidence about the *Dollens* case is relevant to establishing that Wells Fargo's business practices is to routinely foreclose on the mortgages it services without proper internal controls and regardless of insurance coverage. Further, the evidence is admissible under Rule 404(b) as evidence of Wells Fargo's other wrongs or acts to show proof of Wells Fargo's knowledge of problems in its loan servicing, that it was not complying with federal regulations, and that it was improperly crediting payments to fees rather than principal and interest payments. Further, the evidence is also admissible under Rule 404(b) to show that Wells Fargo's treatment of Downs was not a mistake but was part of a larger problem at Wells Fargo during the relevant time period. This evidence can be presented from the two identified witnesses who Downs seeks to have testify at trial and who were present at and testified in the *Dollens* matter.

However, as to the actual physical exhibits the court makes the following findings. The court finds that the judgment, findings of fact and conclusions of law, second amended complaint, and answer to the second amended complaint are not admissible. The second amended complaint and answer to the second amended complaint are not relevant to any of Downs' causes of action. The second amended complaint in *Dollens* alleges different causes of action, and is a document containing only allegations against Wells Fargo. It is not proof of any of Wells Fargo's conduct.

4

1  Similarly, Wells Fargo's answer is not relevant to the present action.

2  As to the *Dollens*' judgment and final findings, the court finds that these documents are
3  inadmissible under Rule 403. *See* FED. R. EVID. 403 (stating that the court may exclude otherwise
4  relevant evidence "if its probative value is substantially outweighed by the danger of unfair
5  prejudice."). Here, any probative value of the judgment is substantially outweighed by the
6  prejudicial effect the document would have. Presenting the jury with a judgment against Wells
7  Fargo for more than 2.7 million dollars when the document does not address or identify what the
8  judgment was for, would unfairly prejudice Wells Fargo as the jury may find that because another
9  court entered an award against Wells Fargo, they should too. Thus, there is a significant danger that
10 the jury might base its decision on emotion or other non-issues if this evidence was admitted. *See*
11 *Tennison v. Circus Circus Enterprises, Inc.*, 244 F.3d 684, 690 (9th Cir. 2001); *United States v.*
12 *Layton*, 767 F.2d 549, 556 (9th Cir. 1985).

13 As to the final findings of fact and conclusion of law, the court notes that this evidence also
14 suffers the same prejudicial problem as the judgment as it makes specific findings against Wells
15 Fargo for certain monetary amounts. Further, the evidence is even more prejudicial than the
16 judgment because it is accompanied by factual findings by a judge based on evidence that will not
17 be presented to the jury and dealing with causes of action not raised in this case, like breach of
18 contract and violation of the Unfair Debt Collection Practices Act. Therefore, the court shall grant
19 in-part and deny in-part Wells Fargo's motion and exclude only the specific documents related to
20 the *Dollens* case identified by Downs.

21 **2. OCC Consent Decree**

22 In her pretrial disclosures, Downs identified a consent decree from the Office of the
23 Comptroller of Currency ("OCC") in which Wells Fargo agreed to settle various banking
24 regulation disputes, enact certain remedial measures to prevent future violations of certain banking
25 regulations, and make monetary payments to several thousand affected Wells Fargo customers.
26 ///

As addressed above, evidence that goes to Wells Fargo's knowledge of its practices during the relevant time period and the lack of mistake when servicing Downs' mortgage is relevant evidence that Downs can seek to introduce at trial. However, as to the actual consent decree document itself, the court finds that it is inadmissible under Rule 403 because it is unfairly prejudicial to Wells Fargo and highly confusing to the jury given the fact that it is a settlement for violations of banking regulations not at issue in this case and does not admit liability by Wells Fargo. As such, the court shall exclude the exhibit itself, but not testimony about the consent decree that may be relevant to Downs' causes of action.

**B. Motion in Limine to Exclude Beverly Paschal's and Dr. Richard Harris' Testimony (Doc. #299)**

Wells Fargo seeks to exclude from trial testimony of Downs' physician Dr. Richard Harris ("Harris") and mental health therapist Beverly Paschal ("Paschal") arguing that the testimony is (1) not helpful to the trier of fact, (2) not based on reliable principles and methods, and (3) not supported by expert reports. Doc. #299.

In opposition, Downs argues that the testimony of Harris and Paschal is highly relevant, would help the trier of fact, and is based on reliable principles and methods. Additionally, Downs argues that expert reports are not required for this testimony because Harris and Paschal were not specially retained to testify at trial, and both formed their opinions during their course of treatment of Downs.

To prevail on her claim for intentional infliction of emotional distress, Downs must demonstrate that "she has suffered some physical manifestation of emotional distress." *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010). Nevada law states that "because an injury is a subjective condition, an expert opinion is required to establish a causal connection between the incident or injury and disability." *Grover C. Dils Med. Ctr. v. Menditto*, 112 P.3d 1093, 1100 (Nev. 2005) (internal quotation omitted). An expert witness can testify about his or her opinion on a matter if "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the

6

evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

The district court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

> Although "[m]any factors will bear on the inquiry," some of the considerations considered relevant by the Supreme Court to such an assessment include: (a) whether the theory or technique can and has been tested; (b) whether the theory or technique has been subjected to peer review and publication; (c) the known or potential rate of error for the technique; and (d) the theory or technique's general degree of acceptance in the relevant scientific community.

*Boyd v. City and Cnty. of S.F.*, 576 F.3d 938, 945 (9th Cir. 2009) (citing *Daubert*, 509 U.S. at 593-94).

In its motion, Wells Fargo argues that Harris and Paschal admit that they do not have a specialized understanding of Downs' physical problems because they cannot "quantify the impact of Wells Fargo's conduct—as opposed to Downs's other stressors or external factors." Doc. #299 at 4. As a result, Wells Fargo argues that their testimony is "purely speculative." *Id.* at 5. The court disagrees. Downs has presented evidence that Harris and Paschal are highly experienced in their fields and have treated Downs for nearly twelve years. Doc. #346 at 3. Harris is a physician who specializes in pain management. *Id.* at 4. Downs argues that his testimony "will be helpful to show that Wells Fargo's tortious conduct caused Mrs. Downs' stress and pain, and decreased her functional capacity." *Id.* Harris has testified that he concluded based on his treatment of Downs that the foreclosure contributed to her fibromyalgia pain. *Id.* Paschal is a licensed marriage and family therapist who specializes in traumatic stress and has treated Downs since 2003. *Id.* Downs argues that her testimony "will assist the trier of fact by showing the harmful effects that Wells

7

Fargo's tortious conduct had on Mrs. Downs, including emotional distress and anxiety, which manifested in a number of physical symptoms." *Id.* Paschal has testified that Downs' anxiety increased dramatically after she received the first foreclosure notice. *Id.*

Wells Fargo further argues that Harris' testimony regarding fibromyalgia is inadmissible because the scientific community lacks consensus on the cause of fibromyalgia. However, Harris has stated that he intends to testify not about the *cause* of the disease, but that the foreclosure *exacerbated* Downs' fibromyalgia pain. Doc. #346 at 7. Harris is the physician who diagnosed Downs' fibromyalgia, and has testified to a reasonable degree of medical certainty that the foreclosure exacerbated her fibromyalgia pain. *Id.* Although Wells Fargo is correct that Harris identifies a number of other factors that contribute to Downs' fibromyalgia pain, his testimony regarding certain incidents that increased Downs' pain could certainly be helpful to a jury, and no evidence before the court indicates that Harris' methods are unreliable. The central question for the court is whether physicians would accept the testimony as "useful and reliable," but the testimony "need not be conclusive because 'medical knowledge is often uncertain.'" *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006)). Furthermore, other courts have permitted expert testimony regarding diagnosis and treatment of fibromyalgia. *See, e.g.*, *Prest v. Jermstad*, No. 07-cv-1771, 2009 WL 3634114, at *7 (S.D. Cal. Oct. 30, 2009) (noting that the witness's "experience treating patients with fibromyalgia, and his work doing fibromyalgia research qualify him as an expert witness on the diagnosis and treatment of fibromyalgia"). Accordingly, the Court will not exclude Harris' expert testimony regarding Downs' fibromyalgia pain at this time.

Finally, Wells Fargo argues that the testimony of Harris and Paschal is inadmissible because neither witness produced a written report as required by Federal Rule of Civil Procedure 26(a)(2)(B), and their opinions were not formed during the regular course of their treatment of Downs because each witness largely relied on Downs' own representations regarding the cause of her pain. Doc. #299 at 7-8. The expert report requirement only applies to witnesses who were

8

"retained or specially employed to provide expert testimony . . . or whose duties as the party's employee regularly involve giving expert testimony." Fed. R. Civ. P. 26(a)(2)(B). The Ninth Circuit holds that "a treating physician is not 'retained or specially employed to provide expert testimony'—a treating physician is a percipient witness of the treatment he rendered—and therefore he is not subject to the written report requirement." *Goodman v. Staples The Office Superstore, LLC*, 644 F.3d 817, 824 (9th Cir. 2011). However, "a treating physician is only exempt from Rule 26(a)(2)(B)'s written report requirement to the extent that his opinions were formed during the course of treatment." *Id.* at 826. In *Goodman*, the court held that although the plaintiff's doctors were her treating physicians, they were not exempt from the Rule 26(a)(2)(B) written report requirement largely because they "reviewed information provided by Goodman's attorney that they hadn't reviewed during the course of treatment." *Id.*

Here, there is no evidence that Harris or Paschal based their opinions about Downs' pain on evidence provided by Downs' attorney, as opposed to their own treatment. Harris stated in his deposition that Downs' fibromyalgia "has gotten much worse" since the foreclosure proceedings began. Doc. #346, Ex. 1 at 78:23-79:2. This is supported by Harris' progress notes, which were written in the course of Downs' treatment. *See id.*, Ex. 2. Paschal has testified that all opinions regarding Downs' condition were formed during her treatment of Downs. *See* Doc. #299, Ex. 4 at 54:14-16, 56:4-8. Based on the evidence before the Court, Harris and Paschal formed their opinions during the course of their treatment of Downs, and are therefore not required to submit an expert report under Rule 26(a)(2)(B). *See Elgas v. Co. Belle Corp.*, 179 F.R.D. 296, 298 (D. Nev. 1998) ("Since a treating physician's opinion on matters such as 'causation, future treatment, extent of disability and the like' are part of the ordinary care of a patient, a treating physician may testify to such opinion without being subject to the extensive reporting requirements of Rule 26(a)(2)(B).").

Based on the foregoing, the court will not exclude the testimony of Harris and Paschal at this time. Any objections to the form or substance of Harris and Paschal's testimony are best

reserved for trial, and any questions regarding Harris and Paschal's experience or qualifications as experts are best reserved for cross-examination.

### C. Motion in Limine to Exclude Downs' Expert Thomas Tarter (Doc. #302)

In its last motion in limine, Wells Fargo seeks to exclude from trial the testimony of Downs' expert witness Thomas Tarter ("Tarter") because his "opinions lack proper foundation, are not based on reliable methodology, are irrelevant, and are not helpful to the trier of fact." Doc. #302 at 1.

An expert witness can testify about his or her opinion on a matter if "(a) the expert's . . . specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The District Court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. "This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592-93.

A trial court "is not required to rigidly apply the specific factors relating to expert scientific evidence to cases involving expert specialized knowledge evidence." *Visa Int'l Serv. Ass'n v. JSL Corp.*, No. 2:01-cv-0294, 2006 WL 3248394, at *2 (D. Nev. Nov. 7, 2006) (citing *United States v. Hankey*, 203 F.3d 1160, 1168-69 (9th Cir. 2000)). For specialized non-scientific testimony like Tarter's, the district court therefore exercises its gate-keeping function by analyzing the expert's reliability, which "depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind" the testimony. *Hankey*, 203 F.3d at 1169. To determine whether specialized expert testimony is admissible, the court considers: (1) whether the opinion is based on scientific, technical, or other specialized knowledge; (2) whether the opinion would assist the trier of fact in understanding the evidence or determining a fact in issue; (3) whether the expert has the

10

appropriate qualifications to render the opinion; (4) whether the testimony is relevant and reliable; (5) whether the methodology or technique used fits the conclusions; and (6) whether the opinion's probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues or undue consumption of time. *Hankey*, 203 F.3d at 1168.

Wells Fargo contends that Tarter is not qualified to opine regarding the insurance product at issue, noting that Tarter's report does not identify any past experience as an expert on optional life insurance products. Further, Wells Fargo argues that Tarter's opinions are not based on reliable methods because his conclusions were based largely on personal opinions rather than objective methodology. Moreover, Wells Fargo argues that Tarter's legal conclusions constitute improper expert witness testimony. Finally, Wells Fargo argues that Tarter's expert testimony will not help the jury determine facts at issue. The court disagrees.

Tarter's relevant experience is provided in detail in his expert report. *See* Doc. #302, Ex. 1 at 5-7. Specifically, Tarter's expert report states the following:

> I am an expert on consumer mortgage lending industry customs, standards and practices. I have been directly involved in literally thousands of consumer mortgage loan transactions and have considerable experience in predatory lending . . . . I have also been retained in excess of 1,000 matters to review documents, facts and practices to provide expert services on mortgage loan origination, mortgage banker and/or broker conduct, consumer credit, credit damages, due diligence and underwriting, compliance, disclosures, lender liability, loan servicing, mortgage lending customs, standards and practices, loan servicing, records retention practices and standards and other banking and lending industry issues. In doing so, I have testified in deposition and/or trial in excess of 200 times and I have been qualified by federal, state and bankruptcy courts as an expert on credit, damages, disclosures, lending industry practices, lender liability, loan origination, loan servicing and other banking and lending issues.

*Id.* at 5. Tarter is also Managing Director of The Andela Consulting Group, a consulting firm that conducts financial and management consulting, litigation consulting, and expert witness services. *Id.* Tarter has worked for banks and financial institutions for more than forty years, has been involved in lending disputes, and has conducted audits "pertaining to suspicious circumstances involving consumer credit disputes, dispute resolution, loan commitments, underwriting and due diligence, loan servicing, mortgage broker relationships, bank and financial service industry

11

practices." *Id.* at 6-7.

Downs states that "Tarter's testimony is now more limited than that disclosed in his expert report." Doc. #345 at 2. Specifically, Tarter will opine that:

> Wells Fargo did not have proper internal controls and processes for: (1) prohibiting delinquency or foreclosure while an insurance claim was pending; (2) processing and posting Mrs. Downs' insurance policy payments; (3) investigating and correcting errors to resolve payment issues with borrowers; (4) determining whether foreclosure fees were appropriate in the state where the home is located, including Nevada; and (5) prohibiting foreclosure notice(s) when dispute resolution was ongoing.

*Id.* Downs states that Tarter also intends to testify about Wells Fargo's oral promises to Downs, regulations related to "lender liability," Wells Fargo's insufficient supporting documents for corporate advances, and the propriety of Wells Fargo's conduct. *Id.* at 5. On its face, Tarter's expert witness report indicates that Tarter's testimony would be helpful for a jury, and that he has the training and experience necessary to be qualified as an expert witness. Furthermore, the evidence and opinions that Tarter intends to share appear relevant and reliable, and the probative value of Tarter's testimony is not substantially outweighed by the risk of unfair prejudice, confusion of issues, or waste of time.

After reviewing the parties' submissions, the court denies Wells Fargo's motion to exclude Tarter's expert testimony. Any objections to the form or substance of Tarter's testimony are best reserved for trial, and any questions regarding Tarter's experience or qualifications as an expert are best reserved for cross-examination.

IT IS THEREFORE ORDERED that defendant's motion in limine to exclude other litigation, complaints, investigations, settlements, or other unrelated matters (Doc. #281) is GRANTED in-part and DENIED in-part in accordance with this order.

///

///

///

IT IS FURTHER ORDERED that defendant's motion in limine to exclude Beverly Paschal's and Dr. Richard Harris' testimony (Doc. #299); and motion in limine to exclude expert Thomas Tarter (Doc. #302) are DENIED.

IT IS SO ORDERED.

DATED this 13th day of February, 2015.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE